PUBLISH

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
02/23/99
THOMAS K. KAHN
CLERK

No. 98-8075

_____

D.C. Docket No. 1:96-CV-2475-MHS

AMERICAN CIVIL LIBERTIES UNION
OF GEORGIA; THE AIDS SURVIVAL
PROJECT; et al.,

Plaintiffs-Appellees,

versus

ZELL MILLER; in his official capacity as
Governor of the State of Georgia; and THURBERT
E. BAKER, in his official capacity as Attorney
General of the State of Georgia,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(February 23, 1999)

Before COX, CARNES, and HULL, Circuit Judges.

CARNES, Circuit Judge:

After prevailing in a 42 U.S.C. § 1983 action to enjoin enforcement of a Georgia statute, the plaintiffs filed a 42 U.S.C. § 1988 application for attorney fees and expenses. They sought a total of $238,866.49, and the district court entered an order awarding them that full amount plus an unexplained excess of $810.65. The defendants, the Governor and Attorney General of Georgia, appeal the order.

We conclude that the district court's award of attorney fees and expenses in that amount was an abuse of discretion, because: a) excessive hours were claimed for drafting the complaint and the briefs; b) excessive hours were claimed in connection with a status conference and a demonstration conducted for the court; c) hours were claimed for time that was not expended on the litigation; d) non-local rates were claimed for some New York attorneys when local attorneys were available to do the work; e) travel expenses were claimed in connection with unnecessary work done by New York attorneys; and f) the plaintiffs were awarded an amount exceeding that sought in their fee application.

## I. BACKGROUND

On September 24, 1996, the fourteen plaintiffs, "a group of individuals and organization members who communicate over the Internet," filed a 179 paragraph complaint under 42 U.S.C. § 1983 challenging the constitutionality of O.C.G.A. § 16-9-93.1, and seeking to prevent its enforcement. See ACLU of Georgia v. Miller, 977 F. Supp. 1228, 1230 (N.D. Ga. 1997). That recently enacted Georgia criminal statute prohibited Internet transmissions which falsely identified the sender, or which used trade names or logos falsely stating or implying that the sender was legally authorized to use them. See id.

With the complaint, the plaintiffs also filed a motion for a preliminary injunction, a supporting brief, and fourteen affidavits. The defendants responded with an opposing brief, six supporting affidavits, and a motion to dismiss. The plaintiffs then filed a reply brief in support of the motion for a preliminary injunction and a brief in opposition to the motion to dismiss.

On January 8, 1997, the district court held a forty-minute status conference at which it decided that an evidentiary hearing on the motion for preliminary injunction would not be necessary. The court did agree, however, to allow the plaintiffs to present a two-hour demonstration on Internet technology. On January 30, 1997, the plaintiffs presented that demonstration, which consisted

primarily of a Georgia Institute of Technology professor showing various features of the Internet to the court.

On June 23, 1997, the district court entered a preliminary injunction against enforcement of the statute, concluding that the plaintiffs were substantially likely to establish that the statute "imposes content-based restrictions which are not narrowly tailored to achieve the state's purported compelling interest" and "is overbroad and void for vagueness." Miller, 977 F. Supp. at 1232. By subsequent agreement of the parties, the preliminary injunction was made permanent on August 7, 1997. See id. at 1235. No discovery, evidentiary hearings, oral argument, trial, or other proceedings occurred during the eleven months the case was pending. No appeal was taken from the injunction.

After prevailing, the plaintiffs filed an application, with accompanying brief and affidavits, seeking reasonable attorney fees and expenses pursuant to 42 U.S.C. § 1988. The application sought payment for the legal services of five attorneys and their paralegals. Those five attorneys were the two lead counsel, Mr. McClain (an Atlanta attorney in private practice) and Mr. Weber (an Atlanta ACLU attorney); and three additional attorneys: Mr. Thorpe (an

4

Atlanta attorney in private practice), Mr. Hansen (a New York ACLU attorney), and Ms. Beeson (a New York ACLU attorney).

In opposition to the fee application, the defendants filed an opposing brief, affidavits, and a chart with color-coded categorization of the requesting attorneys' time sheets detailing what the defendants alleged were excessive, unreasonable, and duplicative hours included in the application. In response to the defendants' opposition, the plaintiffs did not submit any additional evidence or seek an evidentiary hearing. They did, however, file a reply in which they withdrew claimed hours and expenses totaling $3297.70.[1] After that concession, the plaintiffs' fee application sought the sum of $233,075.25 in attorney fees (for 1072.95 hours of attorney and paralegal work) and $5,791.24 in expenses, for a total of $238,866.49.

The district court entered an order finding that both the number of hours claimed and the billing rates requested by the plaintiffs were reasonable. It then awarded the plaintiffs $239,677.14, one hundred percent of the amount

---

[1]Specifically, they withdrew: 4 hours by McClain and .5 hours by Weber, equal to $832.50 in attorney fees, for their work related to press releases; 6.3 hours by Beeson, equal to $1638.00 in attorney fees; and, $827.20 in expenses associated with Beeson's trip to Atlanta to assist in filing the complaint.

requested, plus an unexplained excess of $810.65.

## II. STANDARD OF REVIEW

We review a district court's order awarding attorney fees for an abuse of discretion. See, e.g., Gray v. Lockheed Aeronautical Sys. Co., 125 F.3d 1387, 1389 (11th Cir. 1997). "An abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous." In re Hillsborough Holdings Corp., 127 F.3d 1398, 1401 (11th Cir. 1997). (internal citation and quotation omitted). "Although a district court has wide discretion in performing these calculations," Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994), "[t]he court's order on attorney[] fees must allow meaningful review--the district court must articulate the decisions it made, give principled reasons for those decisions, and show its calculation." Norman v. Housing Auth. of Montgomery, 836 F.2d 1292, 1304 (11th Cir. 1988).

## III. DISCUSSION

### A. THE LEGAL STANDARD GOVERNING ATTORNEY FEES AWARDS

A reasonable attorney fees award under 42 U.S.C. § 1988 is "properly

6

calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." Blum v. Stenson, 465 U.S. 886, 888, 104 S. Ct. 1541, 1544 (1984). "This 'lodestar' may then be adjusted for the results obtained." Loranger, 10 F.3d at 781. In addition, "all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988." Dowdell v. City of Apopka, 698 F.2d 1181, 1192 (11th Cir. 1983).

The "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." Norman, 836 F.2d at 1303. That burden includes "supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate. Further, fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity. . . . A well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case." Id. (citations omitted)

B. THE DEFENDANTS' CONTENTIONS THAT THE DISTRICT

7

COURT ABUSED ITS DISCRETION

The defendants' contention that the district court should not have awarded the plaintiffs $239,677.14 requires us to address whether the district court abused its discretion in (1) determining the number of hours the plaintiffs' attorneys reasonably expended; (2) awarding the New York attorneys Hansen and Beeson non-local rates in calculating the reasonable hourly rate for their services; (3) failing to exclude any of the plaintiffs' attorneys' expenses; and (4) awarding the plaintiffs an amount exceeding that requested in their fee application. We will discuss each of those issues in turn.

## C. WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION IN DETERMINING THE NUMBER OF HOURS REASONABLY EXPENDED?

Part of the district court's task in calculating the lodestar is determining the number of hours reasonably expended on the case. Here, the plaintiffs' fee application claimed that the five attorneys and their paralegals reasonably expended 1072.95 hours on this case. The district court found that number of hours to be reasonable. Contending to the contrary, the defendants argue that hours should have been excluded from that total both because the plaintiffs' attorneys did not exercise sufficient billing judgment, and because some hours

8

included were not expended on the litigation. We will address each of those arguments separately.

## 1. Lack of Billing Judgment

Fee applicants must exercise what the Supreme Court has termed "billing judgment." Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939-40 (1983). That means they must exclude from their fee applications "excessive, redundant, or otherwise unnecessary [hours]," id., which are hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." Norman, 836 F.2d at 1301 (emphasis in original). As we will explain, these fee applicants did fail to exercise billing judgment.

If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are "excessive, redundant, or otherwise unnecessary." Courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded.

Those opposing fee applications have obligations, too. In order for courts

9

to carry out their duties in this area, "objections and proof from fee opponents" concerning hours that should be excluded must be specific and "reasonably precise." Norman, 836 F.2d at 1301. The defendants in this case have discharged that obligation well. In the district court and in this Court, they have carefully analyzed the billing records and done what the fee application itself should have done, which is to calculate the number of hours billed for completing each of various litigation tasks: drafting the complaint, drafting the briefs, preparing for and attending the status conference, and preparing for and attending the Internet demonstration. Defendants have put forward specific arguments designed to show that many of the hours submitted by the plaintiffs in connection with a given task indicate a lack of proper billing judgment.

Before going to the facts relating to this issue, we address three preliminary matters. First, we note that the district court's entire discussion of the reasonableness of the hours submitted consists of general statements that those hours accurately reflect the time and labor required, that the attorneys' affidavits indicate they exercised billing judgment, and that affidavits "from independent civil rights lawyers, as well as the court's own knowledge and experience further confirm the reasonableness of hours proffered." While the

10

court may rely on affidavits and its own knowledge and expertise, where specific objections are made a court's order should consist of more than conclusory statements. The court's order does not mention or enter any findings about the defendants' detailed objections that the hours billed by plaintiffs' attorneys for specified tasks display a lack of billing judgment. A district court should be mindful of its obligation to produce an order on attorneys fees that allows for "meaningful review" by articulating the decisions made and supplying principled reasons for those decisions. See Norman, 836 F.2d at 1304. The more specific the objections to a fee application are, the more specific the findings and reasons for rejecting those objections can be.

The second preliminary matter that needs to be addressed is the plaintiffs' complaint about the precision of the defendants' objections on the billing judgment issues. Instead of complaining that the objections are not precise enough, the plaintiffs protest that the objections are too precise, that the defendants' approach is too itemized. Citing Commissioner, INS v. Jean, 496 U.S. 154, 161-62, 110 S. Ct. 2316, 2320-21 (1990), plaintiffs say that instead of looking at the number of hours spent on specific tasks, the proper approach is to look at the case as a whole to determine if the total number of hours spent is

reasonable.  The <u>Jean</u> decision does not support that position.

The plaintiff in <u>Jean</u>  was awarded attorney fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A), because the government's position in the underlying litigation was not "substantially justified."  The government argued that the plaintiff should not be entitled to attorney fees for litigating the fee matter  unless the government's position about the fee issue itself was not "substantially justified."  The Supreme Court rejected that position, reasoning that fee shifting statutes "favor[] treating a case as an inclusive whole, rather than as atomized line-items." <u>Jean</u>, 496 U.S. at 161-62, 110 S. Ct. at 2320. Nothing about the holding in <u>Jean</u> precludes a fee opponent from challenging a fee request on the basis that an excessive number of hours were billed on some discrete task within the case.  Moreover,  our decisions contemplate a task-by-task examination of the hours billed.  <u>See</u>, <u>e.g.</u>, <u>Loranger</u>, 10 F.3d at 782-83 (noting that 100 hours for the task of preparing a fee request in the case was excessive); <u>Duckworth v. Whisenant</u>, 97 F.3d 1393, 1398 (11th Cir. 1996) (disallowing redundant hours billed for the task of deposing witnesses).

The third and final preliminary matter concerns the method the defendants used to parcel out among the various litigation tasks all of the hours claimed by

the plaintiffs.  The imprecision of the billing records submitted by the plaintiffs makes it difficult, if not impossible, to calculate with any precision the number of hours an attorney devoted to a particular task in this litigation.  The records often lump together all the tasks performed by an attorney on a given day without breaking out the time spent on each task.  The defendants, in attempting to analyze the billing records and calculate the number of hours spent by an attorney on a given task, responded to the imprecision of the records by dividing the total hours billed by an attorney on a given day by the number of tasks listed and then assigning an equal amount of time to each task.  Plaintiffs, who are responsible for the problem to begin with, have not suggested a better solution for it.  Not wishing to penalize the defendants for plaintiffs' failure to keep more precise records, we will accept the defendants' method for parceling out hours to tasks, and we will rely in this opinion on the resulting numbers.

We turn now to the defendants' arguments about the number of hours the plaintiffs' attorneys claimed for various tasks, beginning with their argument that excessive hours were billed for drafting the complaint.

### a. Drafting the Complaint

In addition to billing 21.74 hours for gathering pre-filing factual

13

information and 38.46 hours for pre-filing legal research, the plaintiffs' attorneys billed 147.88 hours solely for the drafting work done on the complaint. The defendants argue that 147.88 hours for drafting a complaint, even one that is 179 paragraphs (58 pages) long, is patently excessive and that private clients would not be willing to pay for that many hours. (The attorneys billed $34,773.85 for those 147.88 hours of drafting work alone.) The defendants contend that 38 of the 179 paragraphs of the complaint were taken in whole or in part from the filings in a similar case, ACLU v. Reno, 929 F.Supp 824 (E.D. Pa. 1996), aff'd, Reno v. ACLU, 521 U.S. 844, 117 S. Ct. 2329 (1997). That other case, which had been filed at the time this case commenced, concerned a First Amendment challenge to a federal statute prohibiting the transmission of pornographic and indecent speech to minors over the Internet.

The plaintiffs respond by noting that their attorneys submitted sworn affidavits stating that their billing records accurately reflect the time required to draft the complaint in this case. Citing Perkins v. Mobile Hous. Bd., 847 F.2d 735, 738 (11th Cir. 1988), they argue that the district court properly declined to exclude any of the claimed hours for drafting the complaint because, they say, "[s]worn testimony [by plaintiffs' attorneys] that . . . [they] took the time claimed

is evidence of considerable weight on the issue of the time required in the usual case and therefore, it must appear that the time claimed is obviously and convincingly excessive under the circumstances." But giving weight to sworn statements of fee applicants does not mean accepting those statements as gospel. Courts should not delegate their duty to examine and judge the reasonableness of fee applications to the applicants.

Having conducted our own review of the complaint and the entire record in this case, we conclude that 147.88 hours for drafting the complaint was excessive–even "obviously and convincingly excessive"–under the circumstances of this case. While there may be a complaint that reasonably requires 147.88 hours to draft, the complaint in this case is not it.

Thirty-six of the complaint's paragraphs contain information taken in whole or in part from the complaint and the proposed findings of fact in the ACLU v. Reno case.[2] So, 20 percent of the complaint's 179 paragraphs are

---

[2] Although the defendants contend that 38 of the complaint's paragraphs were adapted from the ACLU v. Reno filings, our review of the documents leads us to conclude that the actual number is 36. Compare R1: 1 ¶ ¶ 1,3, 4, 9, 16, 17, 26, 27, 28, 29, 31, 32, 33, 35, 36, 37, 38, 39, 42, 43, 44, 47, 50, 87, 110, 111, 112, 114, 156, 157, 160, 161, 162, 163, 177, 178 with R 4: 36 Ex. E ¶ ¶ 1, 5, 7, 10, 24, 25, 38, 40, 44, 46, 47, 49, 53, 62, 80, 81, 82, 87, 150, 153, 174, 175 and R4: 36 Ex. F ¶ ¶ 27, 155, 156, 157, 160, 161, 162, 286, 291, 292, 303, 304, 305, 308, 485,

derived from publicly available filings in another case. Those filings were not only publicly available, they were also easily accessible to these plaintiffs' attorneys because two of them were also attorneys for the plaintiffs in ACLU v. Reno. An attorney is not entitled to be paid in a case for the work he or another attorney did in some other case. That reason alone would justify holding that the district court abused its discretion by failing to exclude any of the 147.88 hours billed for drafting the complaint. See Norman, 836 F.2d at 1301 (district court must exclude excessive, redundant, or unnecessary hours from the fee award).

There is another reason, too. When the plaintiffs filed their complaint they also filed a motion for preliminary injunction, a brief, and fourteen affidavits (one for each of the named plaintiffs). The attorneys billed 97.8 hours for preparation of those affidavits. The defendants have not directly challenged that aspect of the fee application, so the full amount of the hours spent on the fourteen affidavits will be paid.[3] No problem there.

_____

489, 554, 555, 556, 559, 567, 570,572, 574, 575, 587, 606, 615, 620, 665.

[3]We note that the defendants did argue that it was unnecessary to use 14 plaintiffs to challenge the unconstitutionality of the statute, and it therefore follows that 14 affidavits were not necessary to support the preliminary injunction motion. However, that argument is conclusory and fails to convince us the district court clearly erred in finding as a fact that each of the 14 plaintiffs' claims "was unique and necessary to illustrate the myriad effects of the [challenged] statute on the

The problem is here. Our comparison of the fourteen affidavits with the 179-paragraph complaint reveals that the bulk of the complaint is simply an edited version of those affidavits. Paragraphs 4-17 and 87-171 of the complaint contain background information on the plaintiffs and describe the impact of the Georgia Act on their activities. All of the information in those 99 paragraphs is taken from the fourteen affidavits.[4] It has merely been re-edited. In addition, another 48 paragraphs of the complaint (paragraphs 26-73) contain general background allegations about computer communications, the Internet, and anonymous communication on the Internet. Virtually all of the allegations in those 48 paragraphs is derived from information contained in one of those fourteen affidavits the plaintiffs filed in support of the motion for a preliminary

diverse class of Internet users."

[4]Compare R1: 1 ¶ ¶ 4, 87-91, 170-71 with R1: 3 Ex M ¶ ¶ 2, 4, 5, 7, 9-12; R1: 1 ¶ ¶ 5, 92-96, 170-71 with R1: 3 Ex G ¶ ¶ 2, 4, 6-8, 10, 11; R1: 1 ¶ ¶ 6, 97-100, 170 with R1: 3 Ex J ¶ ¶ 2-4, 6-8; R1: 1 ¶ ¶ 7, 101-103, 170 with R1: 3 Ex I ¶ ¶ 2-6; R1: 1 ¶ ¶ 8, 104-109, 168, 170, 171 with R1: 3 Ex F ¶ ¶ 1-5, 9-12, 17-19, 22, 25-28; R1: 1 ¶ ¶ 9, 110-115,168, 170-71 with R1: 3 Ex A ¶ ¶ 1-5, 9, 11-13; R1: 1 ¶ ¶ 10, 116-121, 169-71 with R1: 3 Ex E ¶ ¶ 1-2, 4, 9-15, 14; R1: 1 ¶ ¶ 11, 122-132, 169-71 with R1: 3 Ex D ¶ ¶ 2-7, 9, 11-13, 15-18; R1: 1 ¶ ¶ 12, 133-138 with R1: 3 Ex N ¶ ¶ 2-8, 13-15; R1: 1 ¶ ¶ 13, 139-144, 168, 170 with R1: 3 Ex C ¶ ¶ 1, 3-5, 7-11; R1: 1 ¶ ¶ 14, 145-150, 169-71 with R1: 3 Ex K ¶ ¶ 2-8, 10; R1: 1 ¶ ¶ 15, 151-155, 169-71 with R1: 3 Ex L ¶ ¶ 2-8; R1: 1 ¶ ¶ 16, 156-160, 169-71 with R1: 3 Ex H ¶ ¶ 1, 5-7, 10-13, 16, 17; and R1: 1 ¶ ¶ 17, 161-168, 170, 171 with R1: 3 Ex B ¶ ¶ 1, 2, 4-15, 18, 19.

injunction.[5]  All together, 147 of the 179 paragraphs in the complaint, or 82 percent of them, are edited versions of the  contemporaneously filed affidavits, the work on which was  billed separately and will be paid.[6]

Only 32 paragraphs in the complaint are not derived from the affidavits. Of those 32 paragraphs, four[7] contain information taken from the ACLU v. Reno complaint, three[8] consist of verbatim quotations of the allegedly unconstitutional Georgia act challenged by the plaintiffs, and one[9] simply realleges the previous 174 paragraphs.  Thus, of the 179 paragraphs, only 24 consist of material not derived from some other source.  Under these circumstances, and given the fact that the attorneys have billed and will be paid  an additional 97.8 hours to prepare the affidavits, the district court abused its discretion by failing to exclude as excessive some of the 147.88 hours billed for drafting the complaint.

---

[5]Compare R1: 1 ¶ ¶ 26-73 with R1: 3 Ex A ¶ ¶ 14-61.

[6]There is some overlap between these 147 paragraphs consisting of information taken from the affidavits and the previously referenced 36 paragraphs taken from the ACLU v. Reno filings.  Specifically, 32 of the 147 paragraphs derived from the affidavits also contain information taken from the ACLU v. Reno filings.

[7]R1:1 ¶ ¶  1, 3, 177, and 178.

[8] R1:1 ¶ ¶ 21-23.

[9]R1:1 ¶ 175.

Having concluded that a substantial number of the 147.88 hours must be excluded as excessive, the question arises whether we must remand to the district court the issue of the proper number of hours to exclude, or whether we should decide it ourselves. Although we sometimes remand fee determination issues to the district court for further consideration, we have discretion to decide such issues at the appellate level. As we pointed out in Norman, "[f]or decades the law in this circuit has been that '[t]he court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." Norman, 836 F.2d at 1303 (quoting Campbell v. Green, 112 F.2d 143, 144 (5th Cir. 1940)) (emphasis added). Accordingly, "where the time or fees claimed seem expanded or there is a lack of documentation or testimonial support the [appellate] court may make the award on its own experience." Id.

We have relied on our expertise to make fee determinations in several instances without remanding the issue to the district court. See, e.g., B-M-G Inv. Co. v. Continental/Moss Gordin, Inc., 437 F.2d 892, 893 (5th Cir. 1971) (reducing the fee award by $75,000 after determining the award was excessive);

In the Matter of TMT Trailer Ferry, Inc., 577 F.2d 1296, 1299-1300 (5th Cir. 1978) (reducing the fee award by over $100,000 after determining the award was excessive); Knighton v. Watkins, 616 F.2d 795, 800-01 (5th Cir. 1980) (relying on this Court's own expertise to determine a reasonable hourly rate for purposes of calculating the fee award); In the Matter of U.S. Golf Corp., 639 F.2d 1197, 1206-07 (5th Cir. 1981) (same).[10] At least three of our sister circuits also have recognized that appellate courts possess the expertise and discretionary authority to resolve certain fee determination issues at the appellate level without the need for further remand. See Halderman v. Pennhurst State School & Hosp., 49 F.3d 939, 942-45 (3d Cir. 1995); Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 181 (4th Cir. 1994); Sidag Aktiengesellschaft v. Smoked Foods Prods. Co., Inc., 960 F.2d 564, 566-67 (5th Cir. 1992).

For appellate courts to resolve, instead of remand, fee determination issues is consistent with the Supreme Court's directive in Hensley, 461 U.S. at 437 & n.12, 103 S. Ct. at 1941 & n.12, that a request for attorney fees should not result

---

[10]We may not, however, make the fee award at the appellate level in cases where an evidentiary hearing is required to clarify disputed issues of fact and an evidentiary hearing was requested, but denied, before the district court. See King v. McCord, 621 F.2d 205, 206 (5th Cir. 1980).

in "a second major litigation." By deciding such matters ourselves where possible, we dispose of issues that ought not be extensively litigated, and we exercise an appellate court's authority to "direct the entry of such appropriate judgment . . . as may be just under the circumstances." 28 U.S.C. § 2106. Putting an end to attorneys fees issues as soon as possible is, to borrow a phrase from Holmes, a "concession to the shortness of life." Reeve v. Dennett, 11 N.E. 938, 944 (Mass. 1887).

In this instance, we will exercise our discretion and apply our own expertise in fee determination issues to resolve the issue of how many hours should be excluded as excessive for the task of drafting the complaint in this case. Keeping in mind that "the measure of reasonable hours is determined by the profession's judgment of the time that may be conscionably billed and not the least time in which it might theoretically have been done," Norman, 836 F.2d at 1306, we conclude that lead counsel McClain and Weber should have been able to draft a complaint comprised primarily of material derived from other sources and with only 24 completely original paragraphs in no more than 40 hours (i.e., 20 hours each). The additional 107.88 hours billed by the plaintiffs' attorneys for drafting the complaint–13.89 by McClain, 2.93 by

Weber, 1.31 by Thorpe, 7.90 by Hansen, and 81.85 by Beeson–should be excluded.

### b. Drafting the Briefs

The defendants contend that the district court abused its discretion by failing to exclude any of the hours that the plaintiffs' five attorneys billed, exclusive of research, for drafting and reviewing the three substantive briefs filed before the district court. Those three briefs, which totaled less than 100 pages of written work product, included a brief in support of the plaintiffs' motion for preliminary injunction, a reply brief in support of their motion for preliminary injunction, and a brief opposing the defendants' motion to dismiss the complaint.

The defendants argue that a review of the plaintiffs' attorneys' billing records does not indicate any sort of division of labor among the attorneys for their work in drafting the briefs. Instead, the records indicate substantial duplication of effort. While the defendants concede that the hours of McClain, Weber, and Thorpe were legitimate, they argue that the district court abused its discretion by not excluding as redundant the hours of Hansen and Beeson. We agree.

The "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours." <u>Norman</u>, 836 F.2d at 1303. Redundant hours must be excluded from the reasonable hours claimed by the fee applicant. <u>See</u> <u>Hensley</u>, 461 U.S. at 434, 103 S. Ct. at 1939-40. Such "hours generally occur where more than one attorney represents a client." <u>Norman</u>, 836 F.2d at 1301-02.

However, "[t]here is nothing inherently unreasonable about a client having multiple attorneys." <u>Id.</u> at 1302. For that reason, a reduction for redundant hours "is warranted only if the attorneys are unreasonably doing the same work. An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation." <u>Johnson v. University College of Univ. of Ala. in Birmingham</u>, 706 F.2d 1205, 1208 (11th Cir. 1983). Thus, a fee applicant is entitled to recover for the hours of multiple attorneys if he satisfies his burden of showing that the time spent by those attorneys reflects the distinct contribution of each lawyer to the case and is the customary practice of multiple-lawyer litigation. But the fee applicant has the burden of showing that, and where there is an objection raising the point, it is not a make-believe burden.

23

In this case, the billing records indicate that the plaintiffs threw five attorneys at the task of drafting the three briefs. The three Atlanta attorneys billed a total of 119.99 hours on drafting the briefs: McClain 55.37 hours, Weber 42.00 hours, and Thorpe 22.62 hours, all of which the defendants concede were legitimate. In addition to those hours, however, the plaintiffs seek to recover for Hansen's 29.50 hours and Beeson's 82.12 hours, a total of 111.62 more hours. We conclude that the plaintiffs have not met their burden of showing that the hours billed by Hansen and Beeson reflected a distinct contribution on the part of those attorneys to the task of drafting the briefs.[11]

Missing from the billing records of all of the plaintiffs' attorneys is any indication of the distinct contribution each attorney made to the task of drafting the briefs. Nor do any of the attorneys' affidavits clarify the billing records by describing what each attorney contributed. The closest the affidavits come in this regard is the conclusory statement in Weber's affidavit that the hours he billed "represent a specific division of labor with co-counsel." That statement gives no clue as to what that division of labor might have been. After the

---

[11]We do not reach the issue of whether assigning five lawyers to drafting briefs reflects the customary practice in cases of this type.

plaintiffs were apprised in the district court of the defendants' specific objections to Hansen's and Beeson's hours, they did not take the opportunity to supplement the record--either through additional affidavits or by requesting an evidentiary hearing--to show the distinct contribution, if any, that those two lawyers made to the task of drafting the briefs.

Accordingly, we conclude that the plaintiffs did not carry their burden of showing they were entitled to recover for the hours of each of the attorneys employed on the task of drafting the briefs, and therefore that the district court abused its discretion by failing to exclude the hours Hansen and Beeson billed for drafting the briefs:  29.50 for Hansen and 82.12 for Beeson.

### c.  Preparing for and Attending the Status Conference

The defendants next contend that the district court abused its discretion by failing to exclude any of the 51 hours billed by four of the plaintiffs' attorneys for preparation for, travel to, and attendance at a status conference before the district court in Atlanta.  The defendants argue that the presence of four attorneys, particularly two who flew in from New York, was excessive given that the status conference lasted only forty-minutes and did not address the merits of the case.  Instead, they argue that the preparation for and attendance

at the status conference could have been handled in no more than 2 hours by a single attorney in Atlanta.

We agree that the presence of four attorneys at a forty-minute status conference that did not address the merits of the case was patently excessive. See Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717 (5th Cir. 1974) (The time billed for excessive lawyers in a courtroom or conference when fewer would do, "may obviously be discounted.") abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87, 109 S. Ct. 939 (1989). The presence of two attorneys from New York was particularly unnecessary given that lead counsel McClain and Weber, both of whom are located in Atlanta where the conference took place, were available and attended. Nor was it necessary for four separate attorneys to bill time preparing for such a short, non-merits related status conference. In our judgment, based on a review of the record and all the circumstances, we conclude that lead counsel McClain and Weber should not have needed more than 8 hours between them (i.e., 4 hours each) to prepare for and attend the status conference.[12]

---

[12]While we agree with the defendants that it is possible that the preparation for and attendance at the status conference could have been limited to 2 hours, we also recognize that "the measure of reasonable hours is determined by the

26

We find unavailing the plaintiffs' contention, raised for the first time at oral argument, that the extensive preparation for and presence of four attorneys at the status conference was required because they expected there to be argument on the merits of the preliminary injunction motion. The plaintiffs do not point to any evidence at all in the record to support the claim that they expected argument on the merits. Moreover, it is unreasonable to bill hours based on an unfounded expectation that there might be argument on the merits when a simple call or letter to the district court judge's chambers would have clarified the agenda of the status conference.

Accordingly, we conclude that the district court abused its discretion by not excluding as excessive any of the hours billed by the four attorneys for preparing and attending the status conference. In addition, because the attendance of Hansen and Beeson at the conference was excessive, their travel time to the conference should have been excluded. The hours that should have been excluded in this regard are: 11.25 of McClain's hours; .7 of Weber's hours; 21.4 of Hansen's hours; and 9.65 of Beeson's hours.

---

profession's judgment of the time that may be conscionably billed and not the least time in which it might theoretically have been done." Norman, 836 F.2d at 1306.

### d. Preparing for and Attending the Internet Demonstration

Prior to the district court's ruling on the plaintiffs' motion for a preliminary injunction, the plaintiffs put on a live, in-court demonstration of Internet technology. That demonstration consisted primarily of the plaintiffs' expert, a Georgia Institute of Technology professor, describing various features and characteristics of Internet technology for two hours. Although the plaintiffs sent four lawyers to the demonstration, only McClain spoke, and his role was essentially limited to introducing the expert.[13]

The defendants contend that the district court abused its discretion by failing to exclude any of the hours billed by four of the plaintiffs' attorneys for preparation for, travel to, and attendance at the two-hour Internet demonstration. The defendants argue that, at a minimum, because only McClain spoke at the demonstration, the hours billed by the other attorneys who attended the demonstration, including the travel time of Hansen and Beeson from New York, should have been excluded as unnecessary. In addition, they point out that four attorneys billed over 8 hours each to meet with the expert and review the two-

_____

[13]McClain's words cover less than five pages of the fifty-four page transcript of the demonstration.

hour presentation the day before it was put on. The defendants argue that McClain should have been able to handle those tasks on his own and therefore the time billed by the other lawyers was redundant.[14]

We agree that the presence of four attorneys at the demonstration was patently excessive. The demonstration was an opportunity for the plaintiffs' expert to provide the district court with technical knowledge on the Internet. It was not a hearing to decide legal or factual issues requiring the participation of so many attorneys. Accordingly, we conclude that while the district court did not abuse its discretion in allowing the plaintiffs to recover the hours billed by McClain, the only lawyer who played an active role at the demonstration, and Weber, the other lead counsel in Atlanta, for attending the demonstration, it was an abuse of discretion not to exclude as excessive the hours billed by the two additional attorneys for traveling to and attending the demonstration. See Johnson, 488 F.2d at 717 (The time billed for excessive lawyers in a courtroom

---

[14]The defendants also argue that the plaintiffs' attorneys impermissibly billed hours for performing non-legal services in connection with the demonstration, such as obtaining equipment, and that those hours should be excluded. Because defendants did not raise this argument before the district court, we will not consider it on appeal. See, e.g., Odum v. Clark, 748 F.2d 1538, 1543 (11th Cir. 1984).

29

or conference when fewer would do, "may obviously be discounted."). The time that should have been excluded in this regard are 12.8 hours for Hansen and 11 hours for Beeson.

We also believe that having four lawyers meet with the expert and review his presentation the day before the demonstration constitutes duplicative effort, absent some explanation why a squad of attorneys was necessary. As discussed above, the fee applicant may recover for the time of multiple attorneys spent on some task <u>if</u> he carries his burden of showing that the time spent by those attorneys reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation. The plaintiffs did not carry that burden. Neither the billing records nor the affidavits filed by the plaintiffs' attorneys shed any light on the distinct contribution, if any, each of the four attorneys made to the task of meeting the expert and reviewing his presentation the day before it was made. The billing records merely describe the time as follows: "review presentation with co-counsel and Klein" (McClain) ; "[m]eet with Kline and work on demonstration" (Weber); "[p]repare for court" (Hansen); "[p]repare Klein, expert for hearing" (Beeson).

Nor did the plaintiffs, once they were apprised in the district court of the

defendants' objection to those hours, take the opportunity to supplement the record--either through additional affidavits or by requesting an evidentiary hearing--to show the distinct contribution of each lawyer. Accordingly, the district court abused its discretion by not excluding the hours billed by three of the attorneys (those other than McClain) for the task of meeting with the expert and reviewing the presentation the day before the demonstration. The hours that should have been excluded in this regard are: 8.9 for Weber, 8 for Hansen, and 9.8 for Beeson.

### e. Conferencing among the attorneys

The defendants contend that the district court abused its discretion by failing to exclude excessive hours for internal communications among the plaintiffs' attorneys (e.g., telephone conferences and e-mail). Because they did not raise this argument before the district court, we will not consider it on appeal. <u>See</u>, <u>e.g.</u>, <u>Odum v. Clark</u>, 748 F.2d 1538, 1543 (11th Cir. 1984).

### 2. Hours Not Expended on the Litigation

We next address the defendants' contention that the district court abused its discretion by failing to exclude from the hours for which compensation was awarded those not expended on the litigation. Specifically, the defendants

contend that the following hours should have been excluded for that reason:

(1) 6.33 hours billed by paralegal Rossiya Fajardo for time spent on the Internet "looking" for potential plaintiffs[15];

(2) 1.55 hours billed by Beeson for "soliciting" potential plaintiffs[16];

(3) 21.45 hours billed by McClain (17.65 hours) and Weber (3.8 hours) for interviewing, corresponding, and meeting with potential plaintiffs.[17]

The defendants argue that such hours are not compensable under 42 U.S.C. § 1988.

"The Supreme Court has clearly stated that '[t]he time that is compensable under § 1988 is that reasonably expended <u>on the litigation</u>.'" <u>Loranger v. Stierheim</u>, 10 F.3d 776, 782 (11th Cir. 1994) (quoting <u>Webb v. Board of Educ. of Dyer Cty.</u>, 471 U.S. 234, 242, 105 S. Ct. 1923, 1928 (1985)) (emphasis in original). It is the fee applicant's burden to establish that the time for which compensation is sought under § 1988 is time that was "reasonably expended on the litigation." See <u>Norman</u>, 836 F.2d at 1303 (holding that the fee applicant has

---

[15]<u>See</u> Fajardo's billing entries for August 20, 21, 22, and 27, 1996.

[16]<u>See</u> Beeson's billing entries for July 31 and August 20, 1996.

[17]<u>See</u> McClain's billing entries for June 11, 13, 16, 17, 18, 19, 20, 21, 24, and 26, 1996 and Weber's billing entry for June 14, 1996.

burden of establishing its entitlement to the hours for which he seeks compensation).

We conclude that the hours spent looking for and soliciting potential plaintiffs should not have been included in the time billed. Putting aside any ethical considerations, time spent procuring potential plaintiffs is obviously not expended on the litigation because until the attorney has a client, there is no case to litigate. Accordingly, the district court abused its discretion by not excluding those hours, which are 6.33 hours billed by paralegal Fajardo and 1.55 hours billed by attorney Beeson.

The hours billed for interviewing, corresponding, and meeting with potential plaintiffs present a closer question. As an initial matter, we recognize that in some instances, hours billed for such contacts between an attorney and potential plaintiffs may be compensable under § 1988 if the time spent is not for solicitation purposes. Interviews, correspondence, and meetings with a potential plaintiff may yield factual information which will be utilized in pursuing the litigation so that the time billed for those activities can be considered time expended on the litigation.

The problem here, however, is that the bare entries in the billing

records–e.g., "interview with potential plaintiffs," "correspondence with potential plaintiffs," or "meeting with potential plaintiffs"–do not establish that the time was expended on the litigation. It is impossible to determine whether the time spent was for solicitation or for a purpose which is compensable.

Moreover, although the plaintiffs assert in their brief that the purpose of the various contacts with potential plaintiffs was to conduct a factual investigation and to interview potential witnesses, there is no evidence in the billing records or affidavits to support that claim. Unsupported assertions in a brief cannot substitute for evidence in the record. So far as the record indicates, it is just as possible that the purpose of the hours billed for interviewing, corresponding, and meeting with potential plaintiffs was to solicit those individuals as clients. As we have already held, such time is not compensable.

The result on this matter depends on the burden, and it is on plaintiffs. Because the plaintiffs did not present sufficient evidence to carry their burden of showing that the hours in question were expended on the litigation, the district court abused its discretion by not excluding those hours. The hours it should have excluded in this regard are the 17.65 hours billed by McClain and the 3.8 hours billed by Weber for interviewing, corresponding, and meeting with

potential plaintiffs.

## D. WHETHER THE DISTRICT COURT CLEARLY ERRED IN AWARDING THE NEW YORK ATTORNEYS NON-LOCAL RATES?

The second half of calculating the "lodestar" is determining the "reasonable hourly rate" for the attorneys' services. A reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman, 836 F.2d at 1299 (citations omitted). "In reviewing the district court's hourly rate determination, an appellate court must be mindful that, '[a]lthough an attorney[] fees award is reviewed for abuse of discretion, the determination of what constitutes a reasonably hourly rate is a finding of fact subsidiary to the total award and is therefore reviewed under the clearly erroneous standard." Brooks v. Georgia State Bd. of Elections, 997 F.2d 857, 868 (11th Cir. 1993) (quoting Turner v. Secretary of the Air Force, 944 F.2d 804, 808 (11th Cir. 1991)).

In the district court, the defendants did not challenge the hourly rates requested for the Atlanta attorneys McClain ($185), Weber ($185), and Thorpe ($165). They did, however, object to the plaintiffs' request for "New York

rates" of $350 per hour for Hansen and $260 per hour for Beeson, the New York ACLU attorneys. The district court awarded those higher rates anyway.

Specifically, the defendants argued that the plaintiffs were not entitled to recover New York rates for those attorneys when there were Atlanta attorneys who could have handled this case. In support of their argument, the defendants submitted the affidavit of an Atlanta attorney stating that he was aware of Atlanta attorneys who could have handled this case and that the affidavits of McClain and Weber suggesting there were no such attorneys were incorrect.

The district court did not resolve the dispute concerning whether there were Atlanta attorneys with sufficient expertise to handle this case. Instead, it held that Hansen and Beeson were entitled to New York rates because Hansen's and Beeson's "special expertise was essential to the case." In the alternative, the court found the higher rates for those two attorneys were justified because they were "no higher than rates charged by competent Atlanta trial attorneys in important areas. Indeed, they are lower." We conclude that awarding higher rates on those rationales was clear error.[18]

_____

[18]The defendants also contend that the district court erred by awarding attorney rates for paralegal work. Perhaps, but defendants did not make this contention to the district court, so we will not consider it on appeal. See, e.g.,

The general rule is that the "relevant market" for purposes of determining the reasonable hourly rate for an attorney's services is "the place where the case is filed." Cullens v. Georgia Dep't. of Transp., 29 F.3d 1489, 1494 (11th Cir. 1994).  If a fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims. See id. See also Brooks, 997 F.2d at 869 (upholding decision to award non-local rates based on the district court's finding that there were no local attorneys who could have handled the case).

The district court clearly erred in awarding non-local rates without finding that the plaintiffs had carried their burden of showing there were no attorneys in Atlanta–the place where this case was filed–who were willing and able to handle their claims.  Neither of the district court's reasons for awarding non-local rates even addresses that crucial question.

With regard to the district court's first reason, the mere fact that Hansen and Beeson provided "special expertise . . . essential to the case" does not show that there were no Atlanta attorneys who were willing and able to provide

Odum, 748 F.2d at 1543.

37

comparable expertise. A prevailing plaintiff is not entitled to have the losing party pay for an attorney with the most expertise on a given legal issue, regardless of price, but only for one with reasonable expertise at the market rate. And "market rate" means the hourly rate charged in the local legal market by someone with expertise in the area who is willing and able to take the case, if such an attorney exists.

As for the district court's second reason, the statement that Hansen's and Beeson's New York rates were comparable or lower to Atlanta trial attorneys in undefined "important areas" is irrelevant. The relevant inquiry is not rates charged by attorneys in undefined "important areas;" instead it is the rate charged by attorneys with similar skills in similar cases. See Norman, 836 F.2d at 1299.

We also find unpersuasive the plaintiffs' argument that the district court's award of non-local rates can nonetheless be upheld on the basis of our dicta in Johnson v. University College, 706 F.2d at 1208, that "civil rights litigants may not be charged with selecting the nearest and cheapest attorney."[19] The thrust

---

[19]That statement originated in Dowdell v. City of Apopka, 698 F.2d 1181, 1192 (11th Cir. 1983). It was also dicta in that case.

of the plaintiffs' argument seems to be that interpreting this dicta literally, a civil rights litigant may select and recover the rates charged by the farthest and most expensive attorney. To the extent that the Johnson dicta can be read to suggest as much, it is inconsistent with the law governing fee awards under § 1988. The ultimate touchstone for fee awards under § 1988 is reasonableness. See 42 U.S.C. § 1988(b) ("[T]he court, in its discretion, may allow a prevailing party . . . a reasonable attorney's fee . . . .") (emphasis added). We have never held that it is reasonable to award non-local attorneys' rates when competent local counsel were willing and able to handle the fee-applicant's claims. It is not.

In the end, the heart of the plaintiffs' argument is that Hansen and Beeson were entitled to non-local rates because they were on the forefront of Internet litigation by virtue of their involvement in the ACLU v. Reno case. We disagree. As an initial matter, this case is less about Internet law than it is about application of First Amendment vagueness and overbreadth law to the factual setting of communication over the Internet. Thus, the legal expertise required to litigate this case effectively was experience with those basic First Amendment principles. While expertise with the Internet was helpful, it was not essential to the ability to effectively litigate this case, any more than expertise with a

39

particular religion would be essential to an attorney's ability to litigate a First Amendment free exercise case, or expertise with restaurant design would be essential to an attorney's ability to litigate a trade dress case involving that subject matter. It is legal expertise, not factual expertise, that counts.

We do not rule out the possibility that there might be a case where use of an attorney from a higher-rate market who had extensive prior experience with a particular factual situation could be justified because of efficiencies resulting from that prior experience. That could be reasonable and cost-sensible, especially if it resulted in lower costs than would otherwise be necessary. However, in light of the fact that the plaintiffs' attorneys billed 1072.95 hours for this case, many of which, as we have discussed, were excessive, redundant, or otherwise unnecessary, any finding that savings or efficiencies resulted from the use of non-local counsel in this case would be clearly erroneous.

Finally, we take judicial notice of the fact that in 1996, the year this case was filed, there were more than 14,000 attorneys in the Atlanta metropolitan area.[20] Based on our familiarity with the nature and expertise of the attorneys

[20]A Lexis-Nexis search of the Martindale-Hubbell Law Directory reveals that as of 1996, there were 14,042 attorneys listing a business address in the five counties (Clayton, Cobb, DeKalb, Fulton, and Gwinnett) which make up the

who form the Atlanta Bar, this Court judicially knows that a sufficient number of those 14,000 attorneys possessed the requisite expertise in First Amendment vagueness and overbreadth law to have provided lead counsel McClain and Weber with the additional help they needed to effectively litigate this case.

In sum, the district court clearly erred by awarding non-local rates for Hansen and Beeson. On remand, the district court will have to determine a reasonable hourly rate for Hansen's and Beeson's services according to the Atlanta market rate for attorneys with similar skills and experience in similar cases. In doing so, the district court should take account of the following two points. First, even if the rates Hansen and Beeson submitted are reasonable for New York, they are not reasonable by Atlanta standards given the obvious fact that New York market rates are considerably higher than those which prevail in Atlanta. Second, at the time this case was litigated, Hansen had over twenty years of litigation experience while Beeson had less than three and apparently had worked on only one case in her career. The significant disparity in their experience should be reflected in the rates awarded. With that guidance, we remand the matter of setting reasonable rates for them to the district court.

---

greater metropolitan Atlanta area.

41

## E. WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION IN FAILING TO EXCLUDE ANY OF THE PLAINTIFFS' ATTORNEYS' EXPENSES?

The defendants contend that the district court abused its discretion by not excluding some of the expenses billed by plaintiffs' attorneys. Specifically, they argue it was unreasonable to reimburse the expenses Hansen and Beeson incurred in traveling between New York and Atlanta for the status conference and Internet demonstration.[21]  We agree.

"[W]ith the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988." Dowdell, 698 F.2d at 1192.  As discussed above, the presence of Hansen and Beeson at the status conference and Internet demonstration was unnecessary.  Therefore, their travel expenses to attend those hearings are not reasonable expenses recoverable under § 1988.  The district

---

[21]The defendants also claim the attorneys' expenses for copying and long distance telephone calls for attorney conferences were excessive by at "least two-thirds."  Because they did not raise this argument before the district court, we will not consider it on appeal. See, e.g., Odum, 748 F.2d at 1543.

42

court abused its discretion by not excluding those expenses. The amount that should have been excluded in this regard is $2,697.75.

## F. WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION IN AWARDING THE PLAINTIFFS AN AMOUNT IN EXCESS OF THAT REQUESTED IN THE PLAINTIFFS' FEE APPLICATION?

As mentioned earlier, the district court's order, without explanation, awarded the plaintiffs $810.65 more than they requested in their fee application, probably as the result of an arithmetical error, which constitutes an abuse of discretion. To the extent that the excessive amount was the result of an arithmetical error, it illustrates why district courts should, show their calculations in fee orders. See Norman, 836 F.2d at 1304. The district court's order in Duckworth v. Whisenant, 97 F.3d 1393 (11th Cir. 1996), which we incorporated and made part of our opinion in that case, is a good model.

## IV. CONCLUSION

To sum up, we conclude that the district court abused its discretion by (1) failing to exclude some of the plaintiffs' claimed hours in order to reflect the plaintiffs' attorneys' lack of billing judgment and their attempt to recover for hours not expended on the litigation; (2) awarding higher, non-local rates when there were local attorneys willing and able to handle the plaintiffs' claims; (3)

not excluding unnecessary expenses; and (4) awarding an amount exceeding that sought by the plaintiffs in their fee application. Accordingly, we VACATE the district court's fee award order and REMAND for further consideration consistent with this opinion.

On remand, the district court should recalculate the lodestar consistent with the directions we have provided in this opinion. Specifically, the district court should exclude the following hours from the 1072.95 hours that the plaintiffs claimed were reasonably expended on the litigation:

a) 107.88 hours billed by the plaintiffs' attorneys for drafting the complaint (i.e., 13.89 by McClain, 2.93 by Weber, 1.31 by Thorpe, 7.90 by Hansen, and 81.85 by Beeson);

b) 111.62 redundant hours billed by Hansen and Beeson for drafting the briefs (i.e., 29.50 by Hansen and 82.12 by Beeson);

c) 43.00 excessive hours billed by the plaintiffs' attorneys for preparation for, travel to, and attendance at the status conference (i.e., 11.25 by McClain, .7 by Weber, 21.4 by Hansen, and 9.65 by Beeson);

d) 23.80 excessive hours billed by the plaintiffs' attorneys for travel to and attendance at the Internet demonstration (i.e., 12.8 by Hansen, and 11.0

by Beeson) and 26.7 redundant hours billed by the plaintiffs' attorneys for preparing the expert for the demonstration (i.e., 8.9 by Weber, 8.0 by Hansen, and 9.8 by Beeson);

e) 29.33 hours billed by the plaintiffs' attorneys for hours not expended on the litigation (i.e., 17.65 by McClain, 3.8 by Weber, 1.55 by Beeson, and 6.33 by Fajardo).

In addition, the district court must determine a reasonable Atlanta market rate for Hansen's and Beeson's services. It should also exclude from the fee award the $2,697.75 claimed in expenses for Hansen's and Beeson's travel to the status conference and Internet demonstration and the unexplained excess award of $810.65.

As a result of the directions outlined in the previous paragraph, the district court's fee order should provide as follows. The plaintiffs are entitled to recover $64,270.85 for McClain's services (347.41 hours times $185/hour); $32,295.45 for Weber's services (174.57 hours times $185/hour); $4,915.35 for Thorpe's services (29.79 hours times $165/hour); $1,948.20 for paralegal Fajardo's services (22.92 hours times $85/hour); $483 for paralegal Judith Krone's services (6.9 hours times $70/hour); $78 for paralegal Rebecca Rodkin's

services (1.3 hours times $60/hour); $450 for paralegal Jonathan Borg's services (9 hours times $50/hour); and $75 for paralegal Scott Reynder's services (1.5 hours times $50/hour). Thus, the total of the allowable attorney fees, not counting what is due for Hansen's and Beeson's services, is $104,515.85. The plaintiffs are also entitled to recover for $3093.79 in expenses.

With regard to Hansen, the plaintiffs are entitled to recover for 26.4 hours of Hansen's services multiplied by the reasonable Atlanta rate determined by the district court. Similarly, with regard to Beeson, the plaintiffs are entitled to recover for 110.83 hours of Beeson's services multiplied by the reasonable Atlanta rate determined by the district court.

Finally, we note that nothing prevents the parties from getting together and agreeing upon a reasonable hourly rate to be paid for Hansen's and Beeson's services. Doing so would be an appropriate "concession to the shortness of life."

VACATED and REMANDED.