Leonidas ORTEGA TRUJILLO, Jaime
Ortega Trujillo, and Luis Alberto
Ortega Trujillo, Plaintiffs,

v.

BANCO CENTRAL DEL ECUADOR, an agency of the Government of Ecuador, Augusto De La Torre, and Conover & Company Communications, Inc., Defendants.

No. 98–0373–CIV.

United States District Court,
S.D. Florida.

March 1, 2002.

Mark P. Schnapp, Esq., Greenberg Traurig et al., Miami, FL, for the Plaintiff Ortegas.

John F. O'Sullivan, Esq., Steven E.M. Hartz, Esq., Akerman, Senterfitt & Eidson, P.A., Miami, FL, for Defendant Banco Central del Ecuador.

Thomas R. Julin, Esq., Hunton & Williams, Miami, FL, for Defendant Conover & Company.

Laura Besvinick, Esq., Davis Scott, Weber & Edwards, Miami, FL, for Third–Party Defendant Ansbacher Bahamas Ltd.

Peter J. Yanowitch, Esq., Miami, FL, for Third–Party Defendant Ansbacher Bahamas Ltd.

### ORDER DETERMINING DEFENDANT'S TWO MILLION DOLLAR REQUEST FOR ATTORNEY'S FEES AND COSTS UPON PLAINTIFFS' DISMISSAL OF COMPLAINT

JAMES LAWRENCE KING, District Judge.

Defendant Banco Central del Ecuador's ("Central Bank") motion for approximately $2 million dollars in Attorney's Fees and Costs is the final issue in this case. This issue has literally "taken on a life of its own."

The Plaintiffs Ortega originally filed a suit for liable on February 20, 1998.[1] Now, four years later and eleven months after filing for attorneys' fees and costs, the only issue remaining in this case is for the Court to determine what part of these expenses are "wasted" effort defending this case in that the results of this effort cannot be used in the ongoing case between the same parties in the Bahamas; and the reasonableness of the expenses Defendant incurred.

Mindful of the teachings of the Eleventh Circuit opinion in *Yoffe v. Keller Indus.*, 580 F.2d 126, 129 (5th Cir.1978),[2] which affirmed a 1977 S.D. of Fla. (King, J.) decision, and now understanding the massive cost involved, the Court must give consideration to a fair method for applying Federal Rule of Civil Procedure 41(a)(2).

Plaintiffs moved for voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(2) on February 28, 2001. Pursuant to Federal Rule of Civil Procedure 41(a)(2), a federal court may dismiss an action at the request of a plaintiff "upon such terms and conditions as the court deems proper." (*Id.*) The Court granted Plaintiffs' Motion for Voluntary Dismissal and retained jurisdiction to determine the reasonableness of attorneys' fees, costs and expenses incurred by Defendants in defending this case. (*See* Court's Orders dated March 28 and July 11, 2001.)

1. The legal controversy between Plaintiffs and Defendants has been ongoing in three countries for over five years (four years in this Court, including a year and a half the case was stayed pending an appeal before the Eleventh Circuit Court of Appeals on two of six separate appeals). It involves fraud and defamation claims and counter-claims for over $150,000,000 and has spawned independent investigations for criminal misconduct.

Legal proceedings were initially begun by Central Bank in the Commonwealth of the Bahamas in 1997. Defendants accused the Plaintiffs of defrauding them of over $150,000,000. That civil action is still pending.

This Court became involved a year later, when the Plaintiffs filed a $10,000,000 defamation claim against Central Bank, a former employee of Central Bank, and Central Bank's public relations firm. A $150,000,000 counter-claim based on the same allegations pending in the Bahamas case was filed against the Plaintiffs in this case. The counter-claim was dismissed by this Court, for the reason that it was duplicitous of the pending Bahamas case. The dismissal was without prejudice for Defendants to continue the fraud case where they had originally chosen the forum. Plaintiffs' liable case was stayed until resolution of the year old Bahamas case was resolved.

The dismissal and stay by this court (March 3, 1999) was reversed *Ortega Trujillo v. Conover & Co. Communications, Inc.*, 221 F.3d 1262 (11th Cir.2000). Upon remand, when the Southern District case was set by this court for pretrial conference and trial, Plaintiffs dismissed.

2. The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions issued prior to October 1, 1981. *See Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

Defendant Central Bank seeks more than $2 million[3] in attorneys' fees, costs and expenses paid its attorneys in this litigation. Defendant Central Bank has submitted voluminous, and substantially redacted, time and billing records.[4] In addition, Steven E.M. Hartz, Thomas E. Scott, George Volsky and John F. O'Sullivan filed declarations in support of Plaintiffs' motion.[5] Plaintiffs contest Defendant Central Bank's claim for attorneys' fees, costs and expenses submitting the declarations of Daniel S. Pearson and Samuel A. Terilli, Jr. in support of their opposition. Plaintiffs contend that Defendant has not met its burden of substantiating entitlement to a fee and cost award, and that the redacted submission effectively prevents Plaintiffs from asserting meaningful objections.

All of the witnesses who had filed written declarations, (named in the preceding paragraph) gave oral expert opinion testimony before the Court on November 15, 2001. Plaintiffs' experts opined that Defendant Central Bank's recovery should be no more than approximately $50,0000 to prepare a motion to dismiss, or no more than $110,000 for costs incurred by Defendant Conover & Company Communications ("Conover"); and

no cost recovery for the time, effort and expense incurred for work performed by Defendant's counsel that can be used in the still pending Bahamas litigation between Plaintiffs and Central Bank.

*Discussion*

Rule 41(a)(2) provides that "an action shall not be dismissed at plaintiff's instance save upon order of the court **and upon such terms and conditions as the court deems proper.**" (emphasis added). Eleventh Circuit decisions grant the Court considerable discretion to determine appropriate terms and conditions for a voluntary dismissal.[6] The Fifth Circuit has stated, "a district court considering a motion for dismissal without prejudice should bear in mind principally the interests of the defendant, for it is the defendant's position that the court should protect." *McCants,* at 856; *LeCompte v. Mr. Chip, Inc.,* 528 F.2d 601, 604 (5th Cir.1976). In accordance with *McCants,* this Court has already ruled that the Defendant is entitled to a determination of its reasonable fees, costs and expenses (*See* Orders dated March 28, 2001 and July 11, 2001).

Defendant Central Bank, as the applicant for attorneys' fees and costs, bears the bur-

---

**3.** Defendant's motion, filed April 27, 2001, seeks $1,673,576.30 attorneys' fees and $398,485.35 costs. After objections, responses, replies and supplemental memorandums were filed an evidentiary hearing for the purpose of taking substantial expert testimony, was held November 15 and November 26, 2001. Post-hearing memorandum were filed January 9, 2002.

**4.** See Defendant's Exhibits 4, 6, 8, 10, 11 (appx. 729 pages, Two Volumes) Evid. Hearing 11/15/01

**5.** See Defendant's Exhibits 1, 2, 3 (Volume I) Evid. Hearing 11/15/01

**6.** *Iraola v. Kimberly–Clark Corp.,* 232 F.3d 854, 861 (11th Cir.2000); *ACLU v. Barnes,* 168 F.3d 423, 427 (11th Cir.1999); *McCants v. Ford Motor Co.,* 781 F.2d 855, 857 (11th Cir.1986); *Yoffe v. Keller Indus.,* 580 F.2d 126, 129 (5th Cir.1978).
In *Iraola,* the district court for the Northern District of Georgia failed to state the court's reasons for not granting an award of fees and costs upon granting a motion for voluntary dismissal. The Court of Appeals held that the district court was required to state its findings and conclusions regarding its failure to award attorneys' fees.
In *Barnes,* the Court of Appeals vacated the Northern District Court of Georgia's award of fees and expenses because a) excessive hours

were claimed for drafting the complaint and the briefs; b) excessive hours were claimed in connection with a status conference and a demonstration conducted for the court; c) hours were claimed for time that was not expended on the litigation; d) non-local rates were claimed for some New York attorneys when local attorneys were available to do the work; e) travel expenses were claimed in connection with unnecessary work done by New York attorneys; and f) the plaintiffs were awarded an amount exceeding that sought in their fee application.
In *McCants,* the Northern District Court of Alabama failed to award any fees upon granting a voluntary motion to dismiss. The Court of Appeals vacated the district court's order dismissing the case without prejudice and remanded the case to the district court to determine what fees and costs were appropriate. The Appeals Court strongly implied that the defendant should not recover for work that would be useful in future litigation.
In *Yoffe,* the Court of Appeals upheld this Court's decision to award attorneys' fees and costs in the amount of $44,523.20 (this Court reduced the amount from the $134,789.22 that was originally requested). (S.D.Fla.1977) (King J.) *aff'd,* 580 F.2d 126 (5th Cir.1978).

den of documenting the time spend on litigation. *See American Civil Liberties Union of Georgia v. Barnes,* 168 F.3d 423, 427 (11th Cir.1999); *Norman v. Housing Authority of the City of Montgomery,* 836 F.2d 1292, 1299 (11th Cir.1988). Defendant Central Bank must provide the Court with specific and detailed evidence from which a determination of the reasonableness of the hourly rates [7] for the work performed can be made. *Barnes,* 168 F.3d at 427.

The issue is not over the hourly rates charged (presumably because Plaintiffs' counsel charge substantially the same hourly rates) but rather, the necessity for, and the usability of, the legal work performed. Was it "wasted (on a dismissed case)? Was it necessary? Is it usable?"

■ Plaintiffs assert that the substantially redacted time and billing records provided by Defendant Central Bank do not provide specific and detailed information on the specific tasks performed so as to determine if the work was "wasted," usable or necessary. According to Plaintiffs, they are unable to challenge with particularity Defendant Central Bank's time and billing records, which they must do when challenging the reasonableness of attorneys' fees and costs.[8]

Plaintiffs and their expert witness do not object to the hourly *rates* sought by Central Bank and charged by the lawyers; only whether the total hours are wasted or usable. This does not relieve the Defendant from its obligation under *Barnes* to establish its entitlement to the requested fees and costs.

The failure to meet the *Barnes* criteria makes it almost impossible for the Plaintiffs to set forth specific objections to Defendant Central Bank's motion for fees and cost.[9] Plaintiffs object, in accordance with the implications of *McCants,* to Defendant recovering for those fees and costs that are or will be useful in the pending Bahamas case. *McCants,* at 860. This is also keeping with the decision in *Barnes,* which applies the same rule to litigation that has already occurred. The *Barnes* Court stated, "[a]n attorney is not entitled to be paid in a case for the work he or another attorney did in some other case." *Barnes,* at 430. The Court agrees that Central Bank should not be able to recover those costs and fees that are, have been, or will be useful in the Bahamas litigation.

Central Bank argues that it should not be required to prove that the work *is not* useful; instead they argue that the Plaintiff should be required to show that the work *is* useful in the Bahamas litigation. Appreciating the difficulty of Central Bank to show that some of the fees requested are not useful in the Bahamas case, Central Bank is required to set forth with sufficient particularity how the requested fees do relate to this case. *Barnes,* at 427. Since counsel for Central Bank have redacted a substantial portion of the time sheets and billing records they maintained during the course of this protracted litigation and filed with the Court to support Defendant's request for fees and costs, Central Bank has only partially met the *Barnes* burden.[10]

---

**7.** Plaintiffs do not contest the hourly rates charged by the law firm of Akerman Senterfitt & Eidson for work performed by the numerous lawyers (15), paralegals, secretaries and staff. Ex. No. 11, Vol. II, p. 479

**8.** A court may rely upon its own experience to make a determination of the reasonableness of attorneys' fees and costs if the documentation

provided is insufficient. *See Avirgan v. Hull,* 705 F.Supp. 1544, 1549 (S.D.Fla.1989) (King, J.) *aff'd,* 932 F.2d 1572 (11th Cir.1991).

**9.** Counsel's reason for wholesale redaction of these records was based on a concern over maintaining the confidentiality of facts disclosed by their clients and the disclosure to Plaintiffs of the defense and counterclaim strategy.

**10.** A randomly selected page from Plaintiffs' redacted bill reflecting attorney work is an example of why Defendant's submission does not give the necessary detail required by Rule 41 and the case law. The redacted bill states:

| Date | Services | Atty | Hours | Value |
|------|----------|------|-------|-------|
| Sept. 29, 1998 | Attend meeting with counsel. Conference with Mr. Volsky. Prepare for hearing. Conference with Mr. O'Sullivan. | SEH | 5.20 | $1,664.00 |

Central Bank's failure to set forth its fees could allow the Court to rely on the Plaintiffs' method for determining reasonable costs. *Id.*, at 429. "Not wishing to penalize the defendants for plaintiffs' failure to keep more precise records, we will accept the defendants' method for parceling out hours to tasks, and we will rely in this opinion on the resulting numbers." *Id.*

While *Barnes* allows the Court to use the method suggested by opposing parties for determining fees and costs, it does not require it. The Eleventh Circuit has stated that "[f]or decades the law in this circuit has been that '[t]he court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.'" *Barnes*, at 429 (quoting *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir.1988)) (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir.1940)).

Plaintiffs' experts suggest that Defendant should be awarded no more than $50,000 for basic defense and $110,000 in fees and costs,

for achieving the dismissal of Conover & Company Communications, Inc.[11] The Court must reject this reasoning although superficially it sounds like a sensible alternative solution to the Defendants' position which urges the Court to exercise its broad discretion in these matters and award the entire $2 million to Defendants. It is too simplistic an approach to what has developed into a very complex problem. Therefore although Central Bank failed in part to meet its burden, the Court cannot adopt Plaintiffs' suggestion.

Rather than punish Central Bank for redacting what it argues are privileged records, this Court recognizes that it must award a fair amount that is neither too high or too low.[12] Awarding Central Bank nothing, given its tremendous cost, would be too low in this case. The Court is mindful that awarding Central Bank even approximating what it seeks could be too high. Although the Court has great latitude in awarding fees, "[t]here will be cases in which the amount of money set as the price of a voluntary dismissal without prejudice is so clearly unreasonable as to amount to appealable 'legal prejudice' or to warrant review through a prerogative

| | | | | |
|---|---|---|---|---|
| Sept. 29, 1998 | Receive and review notice from Court of Appeals regarding jurisdictional question. | LTR | .30 | 63.00 |
| Sept. 30, 1998 | Enter new information re bates # to index. | B M | 5.20 | 390.00 |
| Sept. 30, 1998 | Research re: _____; confer with Goslin; confer with Grijalva; revise witness list; review log prepared by Banco Central Del Ecuador. | G V | 5.60 | 1,400.00 |
| Sept. 30, 1998 | Prepare for hearing. Legal research. Conference with Mr. Traynor. | SEH | 5.70 | 1,824.00 |
| Sept. 30, 1998 | Confer with O'Sullivan re: Upcoming meetings; organize production documents; confer with Volsky regarding upcoming meeting work on privilege log. | RCH | 6.60 | 660.00 |
| Sept. 30, 1998 | Legislative history research concerning _____; confer with G. Volsky; confer with J. O'Sullivan. | VAM | 2.80 | 350.00 |
| Sept. 30, 1998 | Confer with Oakes at Federal Reserve regarding review Federal Reserve documents; confer with Volsky and Hartz regarding _____ | JFO | 6.30 | 1,386.00 |

See Ex. No. 4, Vol. I, p. 153

**11.** In addition to the $1,673,576.30 in fees and $398,485.35 in costs claimed to defend the action, Central Bank also claims in its April 27, 2001, Motion for Attorneys' Fees and Costs, an additional $110,000 in fees for defense of Conover & Co. Communications, Inc. ("Conover"). Central Bank argues that Conover was indemnified by Central Bank and these fees should be included in an award to Central Bank. The Plaintiffs counter than "a substantial portion of those fees and costs were undoubtedly incurred as a result of the costly litigation tactics employed by

the Central Bank ... Conover did not request these fees and did not comply with S.D.Fla.L.R. 7.3" *See* Plaintiffs' Response, dated June 3, 2001.

**12.** "Courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *Barnes*, at 428.

writ." *Yoffe,* at 131. Although the Eleventh Circuit has not ruled on how high an amount would have to be to constitute legal prejudice (thus making it a case of dismissal with prejudice), the amount requested in this case (even after adjusting for inflation) is 13 times greater than the award fixed by this judge in 1977 in *Yoffe.*[13] Plaintiffs have suggested in their motion to withdraw its voluntary dismissal that it could try the case cheaper[14] then sustain payment of their award, even if they lost the case and Defendant was awarded a sum under the American Rule. This rule departs from the English Rule. America adopted and continued on with the rule that in the absence of some statutory provision that permits the fees or in the absence of a contract, fees are not awarded to the winning party. When dealing with a situation where there is no winning party, and there has been no particular result on the merits in the case that a winner or loser can be declared by the merits, and the case is somehow dismissed without that result, then it is necessary to look to what is the standard for an award of fees under Rule 41.[15]

"Our cases establish that attorneys' fees generally are not a recoverable cost of litigation 'absent explicit congressional authorization.' Recognition of the availability of attorneys' fees therefore requires a determination that 'Congress intended to set aside this longstanding American rule of law.'" *Key Tronic Corp. v. US,* 511 U.S. 809, 815, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994) (internal citations omitted).

In consideration that the potential award in this case may be so high as to be prohibitedly prejudicial, this Court may allow the Plaintiffs to withdraw the voluntary motion to dismiss and allow this case to proceed to trial, under certain restrictions.[16]

In the interests of ensuring a fair and just award, the Court is required to state its findings and conclusions regarding a decision to award attorneys' fees and costs to allow meaningful review. *Iraola,* at 862; *Barnes,* at 427 quoting *Norman v. Housing Auth. of Montgomery,* 836 F.2d 1292, 1304 (11th Cir. 1988).

### Plaintiffs' Original Suit for Defamation

 Here, the Court finds that Defendant Central Bank is entitled to recover attorneys' fees and costs incurred for any wasted effort in defending Plaintiffs' original liable claim. The Court applies the American rule that attorneys' fees and costs should be awarded for wasted efforts. *See Germain v. Semco Service Machine Co.,* 79 F.R.D. 85, 87 (E.D.N.Y.1978) (awarding costs to a defendant for wasted effort incurred in arguing a question of personal jurisdiction of a New York court in granting plaintiff's voluntary dismissal pursuant to Rule 41(a)(2)); *see also McCants* at 860. The Court finds that Defendant Central Bank's wasted efforts include any work product or documentation produced that cannot be used in the pending Bahamas litigation (or any other litigation between the parties).

### Defendant Central Bank's Counterclaim

Both parties agree that the usability analysis is the proper approach to determine the reasonableness of attorneys' fees and costs in

---

**13.** Summary of Award of Costs and Fees in other Cases before the Fifth and Eleventh Circuits:

| | | |
|---|---|---|
| *Yoffe* | $ 44,523.20 | (adjusted for inflation is $150,167.00) |
| *McCants* | $ 2,817.50 | |
| *Barnes* | $238,866.49 | |

**14.** The Plaintiffs stated that "it would have likely cost the Ortegas significantly less than $2 million to actually continue the pursuit of their defamation claim through trial." Plaintiffs' Response, dated June 3, 2001, at 13.

**15.** *(See* testimony of Daniel Pearson, Transcript of November 26, 2001, Evidentiary Hearing, at 81.)

**16.** Although the Plaintiffs never formally moved to withdraw their Motion for Voluntary Dismissal, they attempted to reserve the right to do so if they found the conditions imposed by the dismissal to be too burdensome. "[I]f the Court is inclined to grant an award of fees and/or costs to the Central Bank as a condition to the dismissal under Rule 41(a)(2), then the Ortegas request the opportunity to decide whether such conditions are too burdensome so that they may withdraw their motion for voluntary dismissal." Plaintiffs' Response, dated June 3, 2001, at 17.

this case where there is still pending a lawsuit in the Bahamas between the parties on the same issues. (*See* Trans. of Evidentiary Hearing at 91).

■ Defendant Central Bank will not be awarded attorneys' fees and costs preparing and litigating, to date of dismissal, Defendant's Counterclaim. The work performed in furtherance of the Counterclaim is not "wasted" because it can be used in the Bahamian litigation. In addition, this Court dismissed Defendant Central Bank's Counterclaim on the ground of *forum non conveniens* (which appeal thereof was dismissed by the Eleventh Circuit Court of Appeals) (*See* Court's Order dated December 3, 1998; dismissed on appeal by Order, dated August 26, 1999, 11th Cir.) and later refused to reinstate the Counterclaim. (*See* Court's Order dated March 19, 2001) Therefore, to award attorneys' fees and costs to Defendant Central Bank for work performed in asserting its counterclaim would be contrary to the American rule and confer an unjustified award for an unsuccessful effort in this Court.

Because of the redaction of the billing records the Court does not have enough information before it to determine how much, if any, of the other requested costs associated with this case or the fees claimed for discovery here, may be useful in the Bahamas. In order for this Court to make additional meaningful findings concerning what fees and costs will be useful in the Bahamas litigation requires more information.

When confronted with this conundrum, the Court found itself laboring under the same handicap previously experienced by Plaintiffs' counsel in their attempt to formulate objections, namely, the redacted bills and time sheets. Without the redacted detail, an intelligent decision concerning "wasted, usable and necessary," as discussed above, cannot be made. For a fair determination of wasted, usable and reasonable, more information is needed from Central Bank and its counsel. For the reasons set forth above, it would be unfair for the Defendant not to be afforded an opportunity to furnish this information insofar as counsel for Central Bank may elect, consistent with the confidentiality requirements of the law. *Supra* at 652. It is therefore,

ORDERED, ADJUDGED and DECREED that

1) The Defendant Central Bank and its counsel shall furnish the redacted information from Defendant's exhibits 4, 6, 8 and 10, admitted into evidence on November 26, 2001, to enable the Court and counsel to determine whether or not the work performed was wasted, usable and necessary within the context of this opinion. Defense counsel, in their sole discretion, shall determine which of the previously redacted charges for fees and costs cannot be detailed with the specificity required by this Order without breaching confidential communications from their clients or theories of strategy and ongoing litigation.[17]

The information required herein must be based upon the record as it now stands, with specific reference to exhibits numbered 4, 6, 8 and 10, admitted into evidence on November 26, 2001, and should be consistent with the governing principles set forth in the foregoing opinion. The redacted information, ordered in the preceding paragraphs, may be furnished as promptly as the Defendant and its counsel can prepare the document, but in no event shall it be filed later than ninety (90) days from the date of this Order.

2) Upon receipt of Defendant Central Bank's written submission, Plaintiffs and Defendants are ordered to confer, at a mutually convenient time, to discuss and jointly analyze Defendant's written submission and to resolve, insofar as that is possible, those items of fees and costs which may be in dispute. This conference shall occur within thirty (30) days of Plaintiffs' receipt of Defendant's written submission.

3) Following the joint meeting set forth in paragraph 2 hereof, Plaintiffs shall file a

---

**17.** Obviously, any claim for attorneys' fees and costs for wasted efforts of the Defendant Central Bank in defending this action or for work, effort and discovery that is hereafter usable in another case, that is not clearly discernable to the Court upon the completion of the detailed analysis herein ordered will, in all probability, have to be denied.

written submission (or chart) setting forth the unresolved objections, if any, Plaintiffs may have to Defendant's submission. Defendants will have fifteen (15) days thereafter to respond to any filed objections.[18]

18. The Court considered revisiting Plaintiffs' request for discovery as set forth in their Response of June 3, 2001, as an alternative to the procedure outlined herein. Upon reflection, the Court determined that its original reasons for denying Plaintiffs' request to take depositions of defense counsel (and perhaps others) were sound and thus, at least for the time being, discovery will not be permitted.