**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

—————————————

No. 24-13354
Non-Argument Calendar

—————————————

ATTORNEY SPENCER SHEEHAN,

*Plaintiffs-Appellants,*

*versus*

BIG LOTS, INC.,

*Defendant-Appellee.*

.

—————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 5:23-cv-00561-GAP-PRL

—————————————

Before JILL PRYOR, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

After the district court dismissed a lawsuit that attorney Spencer Sheehan filed on behalf of client Peggy Durant against

retailer Big Lots, Inc., the court ordered Sheehan to pay the retailer's attorney's fees and ultimately awarded Big Lots $144,047 in attorney's fees. On appeal, Sheehan challenges the amount of the fee award. After careful consideration, we affirm.

## I.     FACTUAL BACKGROUND

Big Lots is a national retailer that operates stores around the country. In its stores, Big Lots sells products under its own "Fresh Finds" label. One of these products is a 24-ounce can of Colombian medium-dark roast coffee.

The back of the coffee canister has a label with brewing directions. The label gives instructions for brewing one, five, or ten servings of coffee at a time. One serving requires one tablespoon of coffee and six fluid ounces of water. Five servings require one-quarter cup (four tablespoons) of coffee and 30 fluid ounces of water. Ten servings require one-half cup (eight tablespoons) of coffee and 60 fluid ounces of water. The label states that the "canister makes up to 210 suggested strength 6 fl oz servings." Doc. 1 at 2.[1]

Sheehan has twice sued Big Lots alleging that this label is deceptive and misleads consumers. We begin by reviewing the proceedings in the first lawsuit, which Sheehan filed on behalf of client Amy Devey, and then discuss the proceedings in this lawsuit, which he filed on Durant's behalf.

---

[1] "Doc." numbers refer to the district court's docket entries.

### A.    The *Devey* Litigation

Sheehan first sued Big Lots on Devey's behalf in the Western District of New York. *See Devey v. Big Lots, Inc.*, 635 F. Supp. 3d 205 (W.D.N.Y. 2022). The complaint alleged that the coffee canister's label was deceptive because it was impossible for a consumer following the instructions for brewing a single serving of coffee at a time to make 210 servings from the canister. *Id.* at 210. Sheehan filed the complaint as a putative class action and asserted claims under New York law for deceptive marketing, breach of express warranty, breach of the implied warranty of merchantability, negligent misrepresentation, fraud, and unjust enrichment, as well as a claim alleging a violation of the federal Magnuson-Moss Warranty Act. *Id.*

The district court dismissed the complaint. *Id.* It explained that all Devey's claims rested on a theory that the label contained a misrepresentation. *Id.* at 213. The court noted that the complaint's allegations "focus[ed] solely on the instructions for brewing a *single* serving" and "completely overlook[ed] the brewing instructions on the label for larger batches," which "require[d] 20% less ground coffee: ¼ cup (4 Tblsp.) for 5 servings, and ½ cup (8 Tblsp.) for 10." *Id.* at 212. After considering the label "as a whole," the court concluded that "as a matter of law" the label "would not have misled a

reasonable consumer, who followed the instructions on the label, in a manner that the consumer would find to be material." *Id.*[2]

In its order dismissing the complaint, the court discussed Sheehan's conduct. It stated that he regularly filed complaints alleging that products were misleadingly labeled, noting that he had "filed over 70 such cases in the Second Circuit, and a few dozen more in other circuits nationwide," and that the "vast majority" of these cases had been dismissed. *Id.* at 213 n.3. The court "admonished" Sheehan because, in both the complaint and the opposition to the motion to dismiss, he had misquoted the text of the coffee canister's label and reminded him of an attorney's "ethical and professional" responsibilities. *Id.* at 211 n.2.

## B.    The *Durant* Litigation

About a year after *Devey* was dismissed, Sheehan sued Big Lots for a second time. This time he filed a lawsuit on behalf of Durant in the Middle District of Florida, again alleging that the coffee canister's label was deceptive. Sheehan filed this lawsuit together with Florida attorney William Wright. The complaint represented that a *pro hac vice* application for Sheehan was "[f]orthcoming." Doc. 1 at 18.

---

[2] The court also concluded that even if the complaint plausibly alleged that a reasonable consumer would have been misled by the label, each claim was due to be dismissed for other, alternative reasons. *Devey*, 635 F. Supp. 3d at 213–19.

Like the complaint in *Devey*, Durant's complaint alleged that the coffee canister's label was deceptive because it was impossible for a consumer following the instructions for brewing a single serving of coffee to make 210 servings from the canister. The complaint also asserted that an "[i]ndependent laboratory analysis" revealed that the canister made only 152 servings when the directions on the label were followed. *Id.* at 3.

Sheehan filed the complaint as a putative class action. The complaint asserted claims under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201–501.213, and Florida's false advertising statute, Fla. Stat. § 817.41. It also raised claims under Florida law for breach of an express warranty and fraud. It asserted that the amount in controversy exceeded $5 million.

In this section, we review in more detail the proceedings on two of the motions Big Lots filed: its motion to dismiss and its motion for attorney's fees.

### 1. Proceedings on the Motion to Dismiss

Big Lots filed a motion to dismiss Durant's complaint. Throughout the *Durant* litigation, it was represented by the same attorneys who represented it in the *Devey* litigation, a team from the law firm Davis Wright Tremaine LLP.

In its motion, Big Lots explained that all Durant's claims rested on the premise that the coffee canister's label was misleading. It argued that the label was not misleading as a matter of law because "no reasonable consumer would be misled by the label"

given the "alternative brewing instructions, as well as the qualifying 'up to' language." Doc. 11 at 21.

Big Lots also raised alternative arguments about why individual claims should be dismissed. It argued that (1) the FDUTPA, false advertising, and fraud claims were due to be dismissed because the complaint failed to satisfy the heightened pleading standard under Federal Rule of Civil Procedure 9(b); (2) the fraud claim was barred by the economic loss rule; and (3) the breach of express warranty claim failed because Durant had not provided notice to Big Lots before filing suit as Florida law required.

Big Lots also discussed Sheehan's litigation history. It reviewed the *Devey* litigation and argued that Durant's complaint was an attempt by Sheehan "to relitigate already[ ]rejected mislabeling claims . . . in a new judicial district." *Id.* at 7. It also cited a recent Northern District of New York case finding that Sheehan had a pattern of filing frivolous lawsuits, holding him in contempt of court, and sanctioning him under Federal Rule of Civil Procedure 11. *See Brownell v. Starbucks Coffee Co.*, No. 5:22-cv-1199, 2023 WL 9053058 (N.D.N.Y. Nov. 30, 2023). Big Lots noted that Sheehan "apparently fabricat[ed] allegations of a laboratory analysis of the product at issue" in that case. Doc. 11 at 10 (citation modified).

Big Lots also questioned the accuracy of Durant's allegation that independent laboratory testing of the product showed that the coffee canister yielded far less than 210 servings of coffee. Big Lots stated that before filing the motion to dismiss it had twice

requested a copy of the laboratory analysis referenced in the complaint, but Sheehan refused to provide it.

In response to the motion to dismiss, Durant withdrew her claims for breach of express warranty and fraud. But she argued that the complaint's allegations were sufficient to establish that the labeling was deceptive and stated claims for violations of FDUTPA and Florida's false advertising statute. Durant dismissed the *Devey* case as an "out-of-circuit court decision" without mentioning that it involved the exact same product and that Sheehan had filed the case. Doc. 21 at 12. She requested permission to amend the complaint if the court determined that she failed to state a claim for relief.

In reply, Big Lots argued that Durant had "provide[d] no grounds to distinguish her claims from those in *Devey* (there are none)" and failed to "identify any basis to depart from the court's ruling there (there is none)." Doc. 24 at 5. It also opposed Durant's request for leave to file an amended complaint.

The court granted the motion to dismiss. It dismissed the breach of express warranty and fraud claims because Durant had withdrawn them. And it determined that Durant failed to state a claim under FDUTPA or Florida's false advertising statute because the complaint did not show that Big Lots had engaged in a deceptive act. Given the number of servings that could be brewed by following the directions for preparing five or ten servings of coffee at a time, the court concluded that it was "patently implausible that any reasonable consumer would be deceived by the [p]roduct's

label." Doc. 29 at 11. It explained that the complaint was "premised on the position that [Durant] cast her eyes only upon the single serve brew instructions and that because they alone do not satisfy her 'impression' of what a subtle 'up to' statement means, the label is misleading." *Id.* But it found that this was not the conclusion that "a reasonable consumer—or reputable lawyer" would reach. *Id.*

The court dismissed the complaint with prejudice. It did not allow Durant to file an amended complaint because any amendment would be futile.

### 2. Proceedings on the Motion for Attorney's Fees

After the district court dismissed the complaint, Big Lots filed a motion for attorney's fees. It sought to collect attorney's fees from Durant and Sheehan but not Wright, the local counsel who also represented Durant.

Big Lots asked the court to award fees pursuant to Florida law and under the court's inherent authority. It argued that it was entitled to fees under both FDUTPA and Florida's false advertising statute. It explained that FDUTPA gave a court discretion to award attorney's fees to a prevailing party, Fla. Stat. § 501.2105(1), and the false advertising statute required a court to award attorney's fees to a prevailing party, *id.* § 817.41(6).

Big Lots also asked the court to award fees under its inherent authority as a sanction for Sheehan's bad faith conduct. It argued that Sheehan acted in bad faith by filing this action when he knew that the claims were frivolous after the dismissal in *Devey*. Big Lots pointed to other evidence to establish Sheehan's knowledge. It

reviewed Sheehan's litigation history in which other courts had identified deficiencies in his pleadings and "explicitly warned" him that "his continued conduct would subject him to sanctions." Doc. 35 at 25.

According to Big Lots, an attorney's fee award was necessary to deter Sheehan from filing frivolous lawsuits in the future. It noted that despite previous warnings from courts, Sheehan had continued to file "repeat, frivolous complaints," showing that the warnings had not changed his behavior. *Id.* On top of that, when Sheehan was asked by a reporter whether the courts' warnings would alter his future behavior, "he exclaimed 'No!'" *Id.* at 13 (quoting Sarah Larson, *You've Been Served*, The New Yorker (Sept. 11, 2023)).

In its motion for attorney's fees, Big Lots also asked the court to consider that Sheehan may have fabricated the allegation in the complaint about independent laboratory testing. It explained that Sheehan refused to provide a copy of the analysis.

Durant opposed the fee request. Her response was submitted by Wright, Sheehan's co-counsel. She argued that the court was not required to award fees under Florida's false advertising statute. Although the statute stated that a prevailing party would recover fees, Durant asked the court to look past this plain language and conclude that only a prevailing *plaintiff* could recover fees. She also urged the court not to exercise its discretion to award fees under FDUTPA or pursuant to its inherent authority because there was a good faith basis for the claims against Big Lots.

Durant's response also argued that Big Lots's reliance on cases involving Sheehan was "misplaced" because her lawsuit "was not filed" by him. Doc. 37 at 13. Although Sheehan's name appeared on the complaint and multiple pleadings, Durant asserted that Sheehan had not "participated" in the litigation because he never filed an appearance in the case or moved for admission *pro hac vice*. *Id.* at 19. Given this lack of involvement, Durant asserted that requiring Sheehan to pay attorney's fees would offend due process. Notably, no declaration, affidavit, or other evidence was submitted to support the assertions in the response about Sheehan's lack of involvement.

The response also addressed the basis for the complaint's allegation about independent laboratory testing of the coffee canister. It included a document that appeared to be an excerpt from a spreadsheet showing that in 2021 Biogen Laboratory Developments, LLC tested the canister and determined that when using one tablespoon of coffee—that is, following the directions to make a single serving of coffee—the canister yielded 152.1 servings, not 210. Durant provided no additional information about the spreadsheet or Biogen's analysis. She then accused Big Lots of making "defamatory and libelous" statements by suggesting that no laboratory testing had been performed. *Id.* at 32.[3]

---

[3] Despite the accusation that Big Lots made defamatory statements, Sheehan has brought no defamation claim against Big Lots or its attorneys. This is unsurprising. It is well established under Florida law that a party generally enjoys

24-13354                Opinion of the Court                11

Big Lots's reply primarily addressed Sheehan's participation in the lawsuit. It pointed out that he had brought the nearly-identical *Devey* case and was listed as plaintiff's counsel on the complaint and in other filings in this case, including the disclosure statement in which Durant identified Sheehan's law firm as having an interest in the outcome of the case. And Big Lots submitted other evidence of Sheehan's participation in the case. One of its attorneys submitted a declaration stating that Sheehan actively participated in a conferral call about the motion to dismiss and sent multiple emails about scheduling in this case.

In its reply, Big Lots also addressed the testing allegations in the complaint. It noted that the testing document Durant attached to her response was not authenticated. And it explained that Sheehan had used the BioGen laboratory in other cases, and the document submitted in this case did "not resemble an actual Bio-Gen report," but instead appeared to be "an attorney-generated excel spreadsheet." Doc. 41 at 10.

After a hearing at which Sheehan had an opportunity to address the court, the court awarded Big Lots attorney's fees. It awarded fees (1) under Florida's false advertising statute, Fla. Stat.

---

an absolute privilege from a defamation claim when the alleged defamatory statement was made in a document filed with a court so long as the statement "bear[s] some relation to or connection with the subject" of the underlying lawsuit. *DelMonico v. Traynor*, 116 So. 3d 1205, 1217 (Fla. 2013); *see Grippa v. Rubin*, 133 F.4th 1186, 1193 (11th Cir. 2025) ("Florida law recognizes an absolute privilege for conduct occurring during the course of a judicial proceeding.").

§ 817.41(6); (2) under FDUTPA, Fla. Stat. § 501.2105(1); and (3) pursuant to its inherent authority.

The court found that Sheehan had "undeniably acted in bad faith throughout this case." Doc. 44 at 22. It explained that the mislabeling claims "were very unlikely to succeed when Sheehan filed them in New York the first time, and they were patently implausible when [Sheehan] filed them again in this district, in bad faith, seeking a better outcome." *Id.* at 15 (citation modified). It also rejected as "frivolous" the contention that Sheehan had not appeared in the matter or participated in the litigation. *Id.* at 9.

In addressing bad faith, the court also considered the complaint's allegations about independent laboratory testing of the coffee canister. Although Durant purported to produce the laboratory report with her response, the court found that the document was "unauthenticated" and "little more than a single line of an excel spreadsheet with some data in it." *Id.* at 14–15. The court observed that when Sheehan had an opportunity to address the court at the hearing, he presented no additional evidence to show that testing had occurred.

The court concluded that an award of fees was necessary to deter Sheehan "from re-filing this suit against [Big Lots] in Texas or Ohio or the 46 other states from which [the claims] have yet to be dismissed." *Id.* at 16. It explained that a "chorus of courts around this nation" had warned "Sheehan to abide by the standards and rules governing this profession," yet he continued to file frivolous lawsuits. *Id.* The court found that "[a]bsent a financial cost for [his]

intransigence," Sheehan would "continue filing frivolous lawsuits around the nation with impunity." *Id*.

The court also found that Sheehan had perpetrated a fraud on the court. It searched the CM/ECF database for the Middle District of Florida and found that Sheehan had appeared as an attorney for plaintiffs in 29 cases in the district. In 24 of those cases, Sheehan was directed to move for *pro hac vice* admission but did so in just two cases. The court found that by failing to seek admission *pro hac vice* in this case and others, Sheehan had committed "unabashed violations of the Local Rules" that were part of a "concerted effort to facilitate his improper maintenance of a regular practice of law in Florida." *Id*. at 20. (citation modified).

Based on its conclusions, the court ordered that Durant and Sheehan were "liable for the reasonable attorney's fees and costs [Big Lots] is entitled to under the fee shifting provisions of the Florida statutes and this Court's inherent authority." *Id*. at 22. It then directed Big Lots to submit an application addressing the amount of the award. The court sent a copy of its order to the state bars for New York and Florida. And it referred the matter to the Middle District of Florida's grievance committee for a determination about whether to bar Sheehan from practicing in the Middle District of Florida.

Big Lots submitted a fee application requesting $144,407 in attorney's fees. This amount represented the fees that it incurred in connection with the motion to dismiss and the motion for

attorney's fees.[4] Big Lots submitted detailed billing records reflecting that four attorneys spent a total of 121.8 hours preparing the motion to dismiss and reply and 60.6 hours preparing the motion for fees and reply.

Big Lots also provided a declaration from Jacob Harper, its lead counsel. Harper reviewed the qualifications of the attorneys who worked on the case, explaining that each had "substantial experience in federal litigation and in defending against consumer mislabeling class actions." Doc. 46-1 at 2. In addition, the attorneys had defended consumer mislabeling class actions brought by Sheehan. Harper explained that the attorneys who worked on the case were mostly based out of Davis Wright Tremaine's Los Angeles office and had hourly rates ranging from $625 to $950 per hour. He opined that these rates were commensurate with the attorneys' experience and that each attorney's rate was "conservative compared to other rates typically charged by other business litigators of [similar] experience and abilit[ies] in Los Angeles and other large metropolitan areas." *Id.* at 4–5.

Harper also reported that the number of hours billed on the case was reasonable. He explained that the attorneys had spent 81 hours preparing the initial motion to dismiss and 40.8 hours preparing the reply brief. As for the motion for attorney's fees,

---

[4] Big Lots also requested that the district court award it an additional $36,011.75, an upward adjustment of 25%, given the extraordinary circumstances of this case. Because the court declined to grant the upward enhancement, we discuss this request no further.

36.9 hours were spent on the initial motion and 23.7 hours on the reply brief. Based on his "extensive experience in class action consumer mislabeling defense," Harper opined that the time expenditures were "reasonable and in line with what [his] firm has expended in preparing comparable motions to dismiss and for fees and costs, as well as supporting reply briefs." *Id.* at 9.

Harper noted that Big Lots was not seeking reimbursement for all the attorney's fees it incurred in the case. He removed charges "for tasks that might be considered excessive, duplicative, [or] clerical." *Id.* at 7. He also left off time billed by one-off timekeepers, librarians, and paralegals. He removed time entries for "case management, procedural motions, review of . . . the Local Rules of this District, preparation for motions that ultimately were not filed (including research related to a contemplated Rule 11 sanctions motion), certain strategy discussions and analysis, and strategy and travel time attributable to the hearing on the Motion for Attorney's Fees." *Id.* Harper removed this time to "simplify" the application and "reduce the amount of total fees sought to an amount commensurate with fees typically deemed reasonable in this District." *Id.*

Big Lots also submitted a declaration from outside attorney Adam Schachter. Schachter, who was admitted to practice in the Middle District of Florida, provided an expert opinion that the amount of the fee request was reasonable.

Schachter addressed whether the hourly rates were reasonable for the Middle District of Florida. Although the hourly rates

were "somewhat higher than rates commonly charged in Orlando or elsewhere in the Middle District of Florida," Schachter concluded that the rates were reasonable. Doc. 46-2 at 14–15. He noted that they were "lower than the hourly rates for other large law firms that are routinely hired to defend against consumer class actions such as this one." *Id.* at 15. Schachter also considered that the attorneys had previously litigated against Sheehan at least seven times. Given Sheehan's "demonstrated history of vexatious, serial filings across the country," Schachter concluded that it was "reasonable for Big Lots to seek out and retain outside counsel with specialized experience in defending against claims brought by [] Sheehan." *Id.* at 15–16. Schachter also found that the fact that Big Lots had actually paid these hourly rates supported a conclusion that the rates were reasonable because a defendant in this type of consumer class action typically would not expect to recover fees.

He also opined that the attorneys spent a reasonable number of hours working on the case. He found that the number of hours spent was "in line with what [he] would expect for" briefing the two motions, "particularly in the context of a vexatious attorney with a history of bad faith and misleading litigation conduct." *Id.* at 19. Schachter also determined that the attorneys had efficiently staffed the case by having associates prepare the initial briefs and then having the more experienced (and expensive) partner and counsel review those drafts. Schachter also reviewed the billing records and found that they did not include time spent on unnecessary tasks or block billing.

In finding the amount of the fee request reasonable, Schachter also considered the limited scope of Big Lots's fee request. He noted that it had not sought to recover more than $25,000 worth of time billed for case management, procedural motions, reviewing the court's local rules, preparing motions that were not filed, reviewing filings from opposing counsel and orders of the court, participating in certain strategy discussions, or travel. In addition, Big Lots was not seeking to recover fees incurred in preparing its application about the amount of the fee award. Schachter opined that "these significant, generous cuts to the billable hours that Big Lots seeks to recover strongly support[] the conclusion" that its fee request was reasonable. *Id.*

Sheehan opposed the fee application. He argued that the attorneys' hourly rates were above the reasonable market rate for the Ocala Division where the suit had been filed. He also asserted that the number of hours billed was unreasonable. He attached to his response a spreadsheet in which he objected to certain time entries as vague, duplicative, and/or including block billing. In his response, Sheehan did not argue that awarding Big Lots the amount of fees it had requested would violate the Constitution.

After reviewing the parties' submissions, the district court awarded Big Lots $144,047. The court calculated this amount by using the lodestar approach and multiplying the number of attorney hours reasonably expended by a reasonable rate.

The court began by finding the number of hours reasonably expended. "[B]ased on its own knowledge and expertise," the court

concluded that the 121.8 hours spent on the motion to dismiss (for the motion itself and the reply) and the 60.6 hours spent on the motion for attorney's fees (for the motion itself and the reply) were reasonable. Doc. 52 at 13. In reaching this conclusion, the court considered the "novelty" of the case as well as the "difficulty presented by aggressively defending Sheehan's frivolous lawsuit." *Id.*

The court considered Sheehan's objections to certain time entries as vague or duplicative or consisting of block billing. It concluded that his "single-word objections" were inadequate under the court's local rules, which required a party to "detail the basis for each objection." *Id.* at 9–10 (quoting M.D. Fla. R. 7.01(d)). But even considering the cursory objections, the court rejected the challenges to billing entries as duplicative, vague, or containing block billing.

The court also found the attorneys' requested hourly rates were reasonable. It began by identifying the relevant legal market. It explained that in general the relevant market was the "place where the case is filed" but noted that there were cases "where use of an attorney from a higher-rate market who had extensive prior experience with a particular factual situation could be justified because of efficiencies resulting from that prior experience." *Id.* at 15 (citation modified).

The court concluded that the applicable legal market in this case was central Florida. including cities in the Middle District of Florida. It acknowledged that this case had been filed in Ocala, a "small, rural division in the Middle District of Florida without a

sitting district judge" and that "[a]ttorney rates in Ocala would normally be less than rates in the larger divisions of this Court like Orlando, Tampa, and Jacksonville." *Id.* at 17. But it determined that "in a case of this magnitude," in which the plaintiff brought a nationwide class action seeking more than $5,000,000 in damages, a defendant "would most likely seek counsel" from one of the Middle District's larger divisions. *Id.*

"Based on [its] own knowledge and experience as a commercial litigator and district judge for the past fifty years," the court found that the rates charged by the attorneys for Big Lots were "approximately 25% higher than comparable counsel in the major legal markets in the Middle District of Florida." *Id.* at 18. But the court determined that the "extenuating circumstances of this case" warranted these "modestly higher rates." *Id.* at 19. It explained that this was not a run of the mill case but instead a national consumer class action where Big Lots faced substantial exposure. The court found that the decision by Big Lots to hire the team from Davis Wright Tremaine who were "expert[s] when it comes to litigating against Sheehan" was a "reasonable" choice, particularly given that these attorneys had successfully obtained dismissal of a "nearly identical claim brought against [Big Lots] by another of Sheehan's clients in New York." *Id.* The court emphasized the importance of hiring attorneys familiar with Sheehan's litigation tactics that included submitting "bad faith filings," making "incredulous allegations," and pursuing "meritless claims" *Id.* at 20.

The court identified other support for its decision that the hourly rates were reasonable. It mentioned that Big Lots had excluded from its request hours expended to prepare the fee application and certain other filings. And the court found that Big Lots had paid its attorneys' bills was further evidence that the hourly rates were reasonable. It explained that Big Lots was "a large, sophisticated consumer of legal services" and had paid the attorney's rates, even though it knew that recovering its fees "would not represent a typical outcome." *Id.* at 20–21.

After multiplying the reasonable hourly rates by the number of hours reasonably expended, the court determined that Big Lots was entitled to $144,047. It ordered that Sheehan and Durant were liable for the fee award.

This is Sheehan's appeal.

## II.

We review the amount of an attorney's fees award for abuse of discretion. *See McMahan v. Toto*, 311 F.3d 1077, 1084 (11th Cir. 2002). "An abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous." *ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (citation modified). "[T]he determination of what constitutes a reasonabl[e] hourly rate is a finding of fact subsidiary to the total award and is therefore reviewed under the clearly erroneous standard." *Id.* at 436 (citation modified).

24-13354                Opinion of the Court                21

We review constitutional issues *de novo*. *See Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1303 (11th Cir. 2009).

## III.

On appeal, Sheehan raises two challenges to the amount of the fee award. First, he disputes the district court's lodestar calculation. Second, he says that the amount of the fee award runs afoul of the Constitution's Excessive Fines Clause. We address each issue in turn.

## A.

To determine the amount of the fee award in this case,[5] the district court used the lodestar approach and "multipl[ied] the number of hours reasonably expended on the litigation times a reasonable hourly rate." *ACLU of Ga.*, 168 F.3d at 427 (citation modified). On appeal, Sheehan attacks the district court's lodestar calculation, arguing that it erred in determining the number of hours reasonably expended and in setting a reasonable hourly rate. We

---

[5] Here, the district court determined that Sheehan was liable for fees under Florida law as well as under its inherent authority. To determine the amount of a reasonable fee under Florida law or federal law, courts use the same lodestar approach. *See Fla. Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1150 (Fla. 1985); *id.* at 1146 (stating that Florida has adopted the "federal lodestar approach for computing reasonable attorney fees"); *Resol. Tr. Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1148 (11th Cir. 1993) (recognizing that "Florida follows the lodestar approach as developed by federal case law").

begin by reviewing the district court's determination about the number of hours expended.

In the fee application, Big Lots sought fees incurred for the work its attorneys performed in preparing the motion to dismiss and the motion for attorney's fees. It reported that three attorneys spent 121.8 hours on the motion to dismiss and four attorneys spent 60.6 hours on the motion for attorney's fees.

We agree with the district court that 182.4 hours was a reasonable amount of time "given the novelty and difficulty presented by aggressively defending Sheehan's frivolous lawsuit." Doc. 52 at 13. In preparing the motion to dismiss and reply, the attorneys reasonably expended 121.8 hours preparing thorough briefs examining numerous issues including whether: (1) the allegations in the complaint plausibly alleged that the coffee can's label included a misrepresentation; (2) the FDUTPA, false advertising, and fraud claims failed because the complaint failed to satisfy Rule 9(b)'s heightened pleading standard; (3) the fraud claim was barred by the economic loss rule; (4) the breach of express warranty claim failed because Durant did not give notice to Big Lots before filing suit; and (5) Durant should be granted leave to amend her complaint. And in preparing the motion for attorney's fees and reply, the attorneys reasonably spent 60.6 hours addressing why Big Lots was entitled to attorney's fees under FDUTPA, under Florida's false advertising statute, and pursuant to the court's inherent authority, including explaining why the action was frivolous and Sheehan acted in bad faith. To show that Sheehan had acted in bad faith, the

24-13354          Opinion of the Court          23

attorneys carefully and thoroughly described his pattern of bringing frivolous lawsuits in courts around the country, including in Florida, and how he continued to file frivolous lawsuits despite being repeatedly admonished. And in their reply, the attorneys had to respond to frivolous arguments, including that Sheehan did not participate in the litigation and that ordering him to pay attorney's fees would violate principles of due process.

Sheehan nevertheless asserts that the 121.8 hours spent on the motion to dismiss was excessive because the attorneys already were familiar with the dispute from their work performed on the *Devey* case. He says that because "this matter and the New York matter are nearly identical in both facts and arguments, and the Defendant's [sic] filed a motion to dismiss in both cases," the attorneys should have spent less time on the motion to dismiss in this case.[6] Appellant's Br. 13. Certainly, the attorneys' familiarity with the dispute and Sheehan's litigation tactics saved them some time in responding to the motion to dismiss. But they still had to prepare the motion and address the multiple causes of action arising under Florida law that Sheehan chose to raise in this lawsuit. They also reasonably chose to describe in these filings Sheehan's litigation history and what occurred in the *Devey* lawsuit. Given this context and the large amount of money at issue in this nationwide class action,

---

[6] Although Sheehan now concedes that the allegations in this case and *Devey* are "nearly identical," Appellant's Br. 13, this was not the tact that he took in litigating the motion to dismiss. At that stage, he never acknowledged the similarities with the *Devey* case; instead, he simply wrote off the *Devey* order as an "out-of-circuit court decision." Doc. 21 at 12.

it was reasonable for the attorneys to spend approximately 80 hours preparing the motion to dismiss and 40 hours preparing the reply.

Sheehan also raises other challenges to the number of hours expended. He complains that Big Lots had multiple attorneys working on the case and suggests that some of their time entries were duplicative. But "there is nothing inherently unreasonable about a client having multiple attorneys" and "a reduction for redundant hours is warranted only if the attorneys are unreasonably doing the same work." *ACLU of Ga.*, 168 F.3d at 432 (citation modified). We are not persuaded that the district court abused its discretion when it refused to reduce the number of hours.

Sheehan also asserts that the district court should have excluded certain hours because Big Lots engaged in block billing. But including more than one task in a time entry does not constitute impermissible block billing when the entry is sufficiently detailed for the court to determine the services performed and the reasonableness of the time spent. *See id.* at 429. Given the detail in the time entries here, we see no error. *See id.*; *Spanakos v. Hawk Sys., Inc.*, 362 So. 3d 226, 242 (Fla. Dist. Ct. App. 2023).

We now turn to the hourly rates. The district court found that hourly rates of $625 to $950 per hour were reasonable in this case. We cannot say that this finding is clearly erroneous. *See ACLU of Ga.*, 168 F.3d at 427.

In determining an hourly rate, "the most critical factor" is "the 'going rate' in the community." *Martin v. Univ. of S. Ala.*, 911 F.2d 604, 610 (11th Cir. 1990). As we have explained, a

reasonable hourly rate generally is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). The "relevant market" is "the place where the case is filed." *ACLU of Ga.*, 168 F.3d at 437 (citation modified). But we have recognized that in certain narrow circumstances the "use of an attorney from a higher-rate market who had extensive prior experience with a particular factual situation could be justified because of efficiencies resulting from that prior experience." *Id.* at 438. The district court is "itself an expert" on the reasonableness of hourly rates and "may consider its own knowledge and experience" on the topic. *Loranger v. Stierheim*, 10 F.3d 778, 781 (11th Cir. 1994).

We conclude that the district court did not clearly err when it determined that the hourly rates in this case, ranging from $625 to $950 per hour, were reasonable. As an initial matter, the district court properly centered its analysis on the relevant legal community—the Middle District of Florida—where the case was filed and identified a reasonable hourly rate for that community.[7] *See ACLU of Ga.*, 168 F.3d at 437.

---

[7] Sheehan argues that instead of considering rates in the Middle District of Florida generally, the court was required to look at rates in Ocala, the division where the lawsuit was filed. But he cites no case holding that a district court abuses its discretion when it considers a reasonably hourly rate in the relevant district instead of a particular division in the district.

It is true that in awarding fees in this case, the district court used hourly rates that were higher than the market rate for attorneys in the Middle District of Florida. But it used these higher rates because Big Lots's attorneys had unique experience that equipped them to litigate the case effectively and efficiently. They had previously defended several mislabeling cases brought by Sheehan. And the attorneys represented Big Lots in the *Devey* litigation, defending the company against mislabeling claims that Sheehan brought involving the same product. Given these unique circumstances, the court did not clearly err in setting the reasonable hourly rates. *See id.* at 438.

For the reasons set forth above, we conclude that the district court did not abuse its discretion when it ordered Sheehan to pay Big Lots $144,047 in attorney's fees.

## B.

Sheehan raises one other challenge to the district court's fee award. He asserts that the district court's order requiring him to pay Big Lots $144,047 violates the Eighth Amendment's prohibition on excessive fines.

Sheehan forfeited this argument by failing to raise it in the district court. When Big Lots submitted its fee application, Sheehan knew that it was seeking a fee award from him in the amount of $144,047. When he opposed the application, he never raised the issue of whether a fee award in this amount was unconstitutional under the Eighth Amendment's Excessive Fines Clause. Because he did not raise this issue in the district court, it is forfeited, and we

24-13354              Opinion of the Court                    27

need not consider it on appeal. *See United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) (en banc).

But even assuming that Sheehan had not forfeited this issue, his Eighth Amendment challenge fails on the merits. As the Supreme Court has explained, the Excessive Fines Clause does not apply to an award "to a private party in a civil suit when the government neither has prosecuted the action nor has any right to receive a share of the damages." *Austin v. United States*, 509 U.S. 602, 606 (1993). Because the Eighth Amendment was "intended to prevent the *government* from abusing its power to punish," the Excessive Fines Clause reaches "only those fines directly imposed by, and payable to, the government." *Id.* at 607 (quoting *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 268 (1989)); *see also Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288, 1308 (11th Cir. 2021) (stating that the "Excessive Fines Clause applies only to payments imposed by the United States (or the States) and payable to it (or them)"). Because Sheehan was not ordered to pay any amount to the United States or a state, his Excessive Fines challenge fails on the merits.

## IV.

For the reasons given above, we affirm the district court's fee award.

**AFFIRMED.**